943 A.2d 264

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Devon BROWN, Appellant.**

Supreme Court of Pennsylvania.

Argued May 10, 2006.

Decided March 26, 2008.

Michael Scott Ferguson, Esq., for Devon Brown.

William Hugh Graff, Esq., Scott P. Rigdon, Esq., Hugh S. Rebert, Esq., George N. Marros, Esq., Katherine L. Doucette, York, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice SAYLOR.

Appeal was allowed to determine whether the filing of an untimely notice of appeal displaces the statutory one-year period for filing a state post-conviction petition, as suggested by a passage from this Court's decision in *Commonwealth v. Murray,* 562 Pa. 1, 753 A.2d 201 (2000).[1]

Appellant was convicted of possession of a controlled substance, possession with intent to deliver, and criminal conspiracy. In May 2001, the trial court imposed a sentence of incarceration spanning from four to eight years. Appellant secured substitute counsel, who sought to make an oral post-sentence motion; further, counsel indicated that he intended to file written post-sentence motions identical to those that had been filed by a codefendant. Counsel, however, failed to follow through on this commitment, and written post-sentence motions were never filed. The trial court nevertheless issued an order purporting to deny Appellant's post-sentence motions in April 2002, eleven months after sentencing.

Six days later, Appellant filed a notice of appeal from the judgment of sentence. A year later (May 2003), the Superior Court quashed the appeal as untimely, holding that, under Rule of Criminal Procedure 720, only a "written post-sentence motion" will toll the time period for the filing of a notice of appeal following the imposition of sentence. Pa.R.Crim.P. 720(A)(1); *see also* Pa.R.Crim.P. 720(A)(3) ("If the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of imposition of sentence...."). This Court denied Appellant's petition for allowance of appeal in December 2003.

1. The decision in this case was held pending issuance of *Commonwealth v. Bennett,* 593 Pa. 382, 930 A.2d 1264 (2007).

In February 2004, Appellant filed a *pro se* petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546 (the "PCRA"), requesting reinstatement of his direct appeal rights *nunc pro tunc* and asserting substantive challenges to the judgment of sentence. At a hearing on the petition, the Commonwealth stipulated that Appellant's appellate counsel was ineffective in his failure to file a timely post-sentence motion or notice of appeal. The PCRA court reinstated Appellant's direct appeal rights but denied relief on the merits of the substantive challenges that Appellant had presented. Appellant lodged an appeal in the Superior Court.

In a divided memorandum opinion, a panel of the Superior Court quashed the appeal, holding that the post-conviction court lacked jurisdiction to reinstate Appellant's direct appeal rights or to otherwise adjudicate his claims for relief, in light of the PCRA's timing provision requiring that any post-conviction petition be filed within one year of the date when the judgment became final. *See* 42 Pa.C.S. § 9545(b). Initially, the lead author observed that compliance with the one-year timing limitation has been construed by this Court to be a jurisdictional requisite to post-conviction review. *See Commonwealth v. Fahy*, 558 Pa. 313, 328–29, 737 A.2d 214, 222 (1999). The author reasoned that, in the absence of a timely written post-sentence motion, Appellant's judgment of sentence became final in June 2001, thirty days after sentence imposition; thus, to implicate a PCRA court's jurisdiction, any post-conviction petition was due to be filed by June 2002. In a footnote, the lead author recognized this Court's decision in *Murray*, 562 Pa. at 1, 753 A.2d at 201, and the Superior Court's in *Commonwealth v. Mazzarone*, 856 A.2d 1208 (Pa.Super.2004), in which the courts calculated the commencement of the PCRA's one-year time period from the disposition of untimely-filed notices of appeal. The author, however, did not apply the approach from those cases.

Judge Klein concurred in the result, observing that a "safety net" for most of the harsh results yielded by the PCRA's one-year time bar is found in the exceptions of section 9545(b)

pertaining to governmental interference, after-discovered evidence, and retroactive application of certain constitutional rulings. *See* 42 Pa.C.S. § 9545(b)(1)(i)-(iii). Senior Judge Montemuro dissented, based on the *Murray* and *Mazzarone* decisions.

■ We allowed appeal to address the discrepancy between the Superior Court's decision and the approach to the one-year time bar to post-conviction review suggested by this Court's reasoning in *Murray.* The appeal presents a question of law, over which our review is plenary.

■ Appellant's arguments stress the equities of his situation, in which he initially had believed that he was pursuing a timely appeal in the Superior Court, but was deprived of the benefit of appellate review by virtue of the ineffective assistance of his counsel. Further, he observes that, under the Commonwealth's theory, by the time counsel's dereliction was discovered by him (*i.e.,* when the Superior Court quashed his initial appeal from the judgment of sentence), the one-year period for the filing of a timely post-conviction petition already would have expired. Thus, he asks this Court to apply the approach from *Murray* to conclude that his petition was not jurisdictionally precluded. The Commonwealth, on the other hand, supports the reasoning of the lead author of the Superior Court panel. Further, it requests that we take this opportunity to modify *Murray,* since it is in clear conflict with the language of Section 9545(b)(3), which prescribes that the one-year time period for filing a PCRA petition commences upon the expiration of the period allowed for filing a direct appeal, where no such appeal is timely filed. According to the Commonwealth, to rule otherwise would not only disregard an express legislative prescription, but also, would permit defendants to extend the time for asserting PCRA claims by merely lodging untimely submissions in the appellate courts.

In *Murray,* the post-conviction petitioner was convicted of two criminal offenses and was sentenced in November 1995. His trial counsel filed an untimely notice of appeal, which was dismissed in January 1996. In July 1997, the petitioner filed his PCRA petition, alleging ineffective assistance of counsel in

the failure to file a timely direct appeal. The PCRA court dismissed the petition as untimely, and the Superior Court affirmed. *See Murray,* 562 Pa. at 2–3, 753 A.2d at 201–02.

On discretionary review, this Court opened its analysis with reference to the PCRA's timing provision, explaining that, subject to specific exceptions that had not been pled in the case, the statute prescribes that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" *Murray,* 562 Pa. at 3–4, 753 A.2d at 202 (quoting 42 Pa.C.S. § 9545(b)). The petitioner argued that the PCRA's timeliness provisions should not apply to his claim that his trial counsel was ineffective for failing to file a timely direct appeal, because that claim, if proven, would establish that he was denied his constitutional rights to the effective assistance of counsel and to a direct appeal. *See id.* The Court determined, however, that the nature of the constitutional violations alleged had no effect on the application of the PCRA time bar, under the plain meaning of the post-conviction statute, and in light of this Court's holding that the timeliness requirements are jurisdictional in nature. *See id.* at 5, 753 A.2d at 203 (citing *Fahy,* 558 Pa. at 328–29, 737 A.2d at 222; *Commonwealth v. Peterkin,* 554 Pa. 547, 553–55, 722 A.2d 638, 641 (1998)).

Further, in rejecting Appellant's alternative argument that his conviction had never become final because he had never fully litigated a direct appeal, *Murray* relied on the plain language of the PCRA commencing the one-year period "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, **or at the expiration of the time for seeking the review.**" *Murray,* 562 Pa. at 5, 753 A.2d at 203 (quoting 42 Pa.C.S. § 9545(b)(3)) (emphasis in original). Additionally, and of particular significance to the present case, the Court indicated that the petitioner's judgment of sentence had become final, and deemed the one-year period allowed for the filing of a post-conviction petition to have commenced, thirty days after the petitioner's appeal was quashed as untimely by the Superior Court. *See id.*

We agree with the Commonwealth that *Murray's* statement in this last regard was incorrect, as it is facially at variance with Section 9545's prescription that a judgment of sentence is final for purposes of the one-year time bar upon the expiration of the time for seeking review in circumstances in which direct appellate review is unavailable. Notably, the Court's error in this regard was not significant to the outcome of *Murray*, as the petitioner's post-conviction submission was untimely utilizing either the correct and earlier date of December 1995 (thirty days after imposition of sentence) in the calculation or the later date that *Murray* employed. *See Murray*, 562 Pa. at 5, 753 A.2d at 203. Moreover, the Court in *Murray* was not resolving any argument distinguishing between the expiration of the appeal period and the dismissal of the untimely notice of appeal as the trigger for the commencement of the one-year limitation period, because, again, such distinction was immaterial to the outcome. Therefore, the relevant passage from *Murray* was in the nature of *dictum*, which does not have the effect of precedent. *See Commonwealth v. Singley*, 582 Pa. 5, 15, 868 A.2d 403, 409 (2005).[2]

█ We acknowledge Appellant's equitable arguments; however, it is now well settled that there is no generalized equitable exception to the jurisdictional one-year time bar pertaining to post-conviction petitions. *See Commonwealth v. Robinson*, 575 Pa. 500, 508, 837 A.2d 1157, 1161 (2003).[3] Additionally, we note that in *Peterkin* the Court considered the one-year time bar in the context of the provision of the Pennsylvania Constitution restricting the government's ability

2. In several passages, the dissent suggests that Appellant relied to his detriment on the *Murray* decision and that he is therefore being punished for this Court's mistake in the *dictum* in that case. *See, e.g.,* Dissenting Opinion, *op.* at 370–72, 943 A.2d at 274. Appellant, however, has not asserted that he was contemporaneously aware of the *Murray* dictum and forewent efforts to confirm the timeliness of his direct appeal on such account. Thus, we fail to see the detrimental reliance. Rather, it appears that the *Murray* dictum is presently invoked by Appellant in a *post hoc* manner, just as it would have been entirely possible for him to present alternative arguments, such as the constitutional claim fashioned *sua sponte* by the dissent.

3. *See also Commonwealth v. Abu–Jamal*, 574 Pa. 724, 731 n. 5, 833 A.2d 719, 724 n. 5 (2003); *Commonwealth v. Rienzi*, 573 Pa. 503, 508, 827

to suspend the privilege of the writ of habeas corpus, *see* PA. CONST. art. I § 14, concluding that the timing requirement represented a reasonable restriction. *See Peterkin,* 554 Pa. at 557–58, 722 A.2d at 642. While *Peterkin* did not explore specific circumstances along the lines of those that Appellant faced, there is no effort in the briefing in this appeal to present a developed argument grounded on the Pennsylvania Constitution that *Peterkin* should be reconsidered and/or over-ruled in whole or in part. *See generally Abu–Jamal,* 574 Pa. at 731 n. 5, 833 A.2d at 724 n. 5 (declining to reconsider *Peterkin* ).[4]

■ We hold that, in circumstances in which no timely direct appeal is filed relative to a judgment of sentence, and direct review is therefore unavailable, the one-year period allowed for the filing of a post-conviction petition commences upon the actual expiration of the time period allowed for seeking direct review, as specified in the PCRA.

The order of the Superior Court is affirmed.

A.2d 369, 371 (2003); *Commonwealth v. Eller,* 569 Pa. 622, 634, 807 A.2d 838, 845 (2002).

Again, and as highlighted by Judge Klein, the exceptions to the one-year time bar are those delineated in the PCRA, *see* 42 Pa.C.S. § 9543(b)(1)(i)-(iii), which must be alleged in any petition that does not otherwise facially comply with the general rule of timeliness.

4. The Court, however, has recognized the potential availability of an as-applied constitutional challenge to the application of the PCRA's time restriction, *see Commonwealth v. Abdul–Salaam,* 571 Pa. 219, 226-27, 812 A.2d 497, 501 (2002), which approach was recently reaffirmed in *Commonwealth v. Bennett,* 593 Pa. 382, 398, 930 A.2d 1264, 1273 (2007). Therefore, the dissent's contention that this Court has "stead-fastly and unremittingly" signaled its unwillingness to consider any and all arguments such as might yield restoration of direct appeal rights, *see* Dissenting Opinion, *op.* at 278, is not well founded. The controlling points here are that Appellant has raised no such argument in his present appeal, *see generally Commonwealth v. LaCava,* 542 Pa. 160, 176 n. 9, 666 A.2d 221, 228 n. 9 (1995) (explaining that issues are waived when not included in the appellant's brief), and, as the dissent ultimately comes around to recognizing, the statutory one-year time bar applies by its terms to Appellant's post-conviction petition. *See* Dissenting Opinion, *op.* at 275. Finally, we differ with the dissent to the degree it is suggesting that a litigant may rely on *dictum* to omit essential argument on a significant constitutional matter. *See id.* at 273.

Justice BALDWIN did not participate in the consideration or decision of this case.

Chief Justice CAPPY and Justice NEWMAN did not participate in the decision of this case.

Justice EAKIN joins the opinion.

Chief Justice CASTILLE joins the opinion and files a concurring opinion.

Justice BAER files a dissenting opinion.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion in its entirety. I write solely in response to Mr. Justice Baer's Dissenting Opinion.

The latter part of the Dissenting Opinion makes some thoughtful points, albeit on an issue and theory of relief not raised or briefed by the parties, *i.e.*, whether this case should be deemed subject to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546, at all, or should fall within traditional habeas corpus review. The availability of habeas corpus review in instances where the PCRA effectively is unavailable is a point I have addressed in other cases. *See Coady v. Vaughn,* 564 Pa. 604, 770 A.2d 287, 290–94 (2001) (Castille, J., joined by Newman, J., concurring) (discussing interrelationship of PCRA and Pennsylvania habeas corpus statute, 42 Pa.C.S. § 6501); *see also Commonwealth v. Haag,* 570 Pa. 289, 809 A.2d 271, 289–90 (2002) (Castille, J. concurring); *Winklespecht v. Pa. Bd. of Prob. & Parole,* 571 Pa. 685, 813 A.2d 688, 692–93 (2002) (Castille, J., joined by Newman, J., concurring). The Majority has explained why the Dissent's musings in this regard fail, *i.e.*, the issue is raised *sua sponte* by the Dissent, and thus the question is not before us and we lack adversarial presentations.[1] Although the Dissent concedes that the issue is its own, it suggests that the Court

1. I have addressed elsewhere the importance of adversarial presentations to the making of sound jurisprudence. *See Coady,* 770 A.2d at 294

somehow is to blame for appellant failing to raise the particular theory, since the Court supposedly "has signaled continuously and unremittingly its unwillingness to consider such arguments." Dissenting Op. at 377, 943 A.2d at 278.

The Dissent's opinion of this Court's supposed "unwillingness" to consider issues in this area is but the last of its criticisms of our precedent. The Dissent begins by questioning the correctness of this Court's holding that the PCRA time-bar is "jurisdictional." [2] More intemperately, the Dissent proceeds to assert that the Court "has felt compelled to tolerate constitutional violation upon constitutional violation, sacrificing fundamental rights at the altar of finality." Dissenting Op. at 367, 943 A.2d at 272. The Dissent goes on to criticize what it calls "our increasingly narrow reading of the time constraints under the PCRA" which, it says, has "painted us into a corner." *Id.* at 369, 943 A.2d at 273. In my view, the Dissent's criticisms of the Court's jurisprudence in this area, and by extension its criticism of the Majority's analysis here, are unwarranted.

The PCRA time-bar was enacted following the beginning of my tenure on the Court since 1994, and so I have participated in, and even authored, some of the decisions that are the subject of the Dissent's concern. Those decisions primarily posed questions of statutory construction, but with an eye also

(Castille, J., concurring) ("I do not indulge the conceit that, without adversarial presentations, it is possible to discern any and all arguments that may be made against the availability of state habeas corpus review. There may very well be more to be said on the matter. I would not foreclose that option, but would await an actual case or controversy, with adversarial presentations, to definitively resolve the question.") (footnote omitted).

2. The time-bar is found in a section of the PCRA entitled, "Jurisdiction and proceedings." The provision is written in mandatory terms ("Any petition ... shall be filed within one year of the date the judgment becomes final ..."), and it includes a finite number of cognizable exceptions to the mandate ("... unless the petition alleges and the petitioner proves...."). 42 Pa.C.S. § 9545(b)(1). There is no basis in the text for the notion that the statute contemplates judicial improvisation of other exceptions—such as the "equitable tolling" doctrine espoused in federal jurisprudence which makes a mockery of the federal limitations period. In any event, this Court's construction apparently has satisfied the General Assembly, which has not amended the provision.

to the complexities of review where some issues do not fit so neatly into statutory categories. As Justice Saylor's very modest and careful Majority Opinion in this case demonstrates, the Court's time-bar decisions are not the absolutes the Dissent suggests they are, much less are the cases a product of ill motivation or a predetermination to advance "narrow construction," whatever that might be. Furthermore, Justice Saylor went to quite some length in his comprehensive Dissenting Opinion in *Commonwealth v. Bennett,* 593 Pa. 382, 930 A.2d 1264 (2007) to describe the complexities and balancing that **in fact** have occurred historically as this Court has considered the PCRA time-bar.[3] The point is, this Court had, and has, a statute to construe, we have done so in good faith, and decisions were rendered, at times over plausible counterconstructions, and at times over not-so-plausible viewpoints grounded in policy differences.

A proper understanding and appreciation of the PCRA requires consideration of context. With respect to the 1995 PCRA amendments, it is worth noting that there is nothing unconstitutional, or even unwise, about the General Assembly's concern with finality. Like various pieces of legislation, the 1995 amendments were a response to existing abuses. Not coincidentally, the federal habeas statute was amended around the same time, and Congress likewise adopted a time-bar as well as other restrictions, similar to those found in the PCRA, designed to curb abuses and to bring finality to criminal cases. Prior to the PCRA amendments which included the one-year time-bar, Pennsylvania capital defendants tended to sit on their collateral review rights, except in the rare instance where the Governor signed a death warrant.[4]

---

3. Unfortunately, the *Bennett* Majority was deaf to that history. *Bennett's* failure even to attempt to respond was something I viewed as a tacit concession that the Dissent's reasoning was unanswerable. I continue to believe that *Bennett* was wrongly decided. If the Court were to embark upon the wholesale reconsideration of existing time-bar decisions that the Dissent appears to prefer, I would begin with *Bennett.* In any event, the very existence of *Bennett* impeaches the Dissent's characterization of this Court's caselaw.

4. The Governor's failure to timely sign death warrants led to litigation, *see Morganelli v. Casey,* 163 Pa.Cmwlth. 538, 641 A.2d 674 (1994)

Meanwhile, non-capital defendants were free to file for collateral review early and often, and many abused the indulgence. Indeed, it was not uncommon to see an appeal involving a sixth or seventh collateral attack, which required an absurd waste of resources. The abuse was so rampant in serial petition cases that this Court, well in advance of the legislative reaction, itself adopted a significant, non-statutory restriction upon the prospect for post-conviction relief. Thus, in *Commonwealth v. Lawson*, 519 Pa. 504, 549 A.2d 107, 112 (1988), the Court unanimously declared that, "[a] repetitive or serial [post-conviction] petition may be entertained only for the purpose of avoiding a demonstrated miscarriage of justice, which no civilized society can tolerate." Finality in criminal cases does properly trump other considerations, in certain circumstances. By the same token, rights, including constitutional rights, may be waived; there is nothing inherently wrong in procedural regulation of the exercise of rights. Some may believe that criminal cases are different and convictions should never be deemed final; but the citizens, through their duly elected representatives, are not obliged to share that view.

More fundamentally, in understanding the PCRA, one must remember the interplay of traditional habeas corpus and Pennsylvania statutes governing post-conviction review. At least in the context of being employed as a vehicle to challenge a **criminal conviction,** the historical writ was not such a "great" thing for Pennsylvania criminal defendants. Unlike a person who had yet to be tried, a convicted criminal obviously was well aware of the cause of his detention. Common law habeas corpus afforded convicted criminals very little prospect of relief until the sudden criminal procedure revolution engineered by the Earl Warren Supreme Court in the early 1960s. In the wake of those federal decisions, this Court reworked and expanded the scope of the historical writ as a matter of defensive necessity, *i.e.,* to accommodate the flood of petitions

(mandamus issued directing Governor to issue death warrant), and eventually to passage of the warrant-signing statute, which ensured that warrants would be timely issued, *see* 61 Pa.C.S. § 3002.

generated by brand new (and often retroactive) federal imperatives in criminal procedure. Justice (later Chief Justice) Samuel J. Roberts of this Court described the transition as it was occurring, in his thorough and scholarly opinion in *Commonwealth ex rel. Stevens v. Myers,* 419 Pa. 1, 213 A.2d 613 (1965):

In earlier times petitions for writs of habeas corpus were a far greater rarity than today, at least in Pennsylvania. Today's frequent resort to the writ can be laid to the burgeoning use of the writ as a means of attacking criminal convictions collaterally. This phenomenal development of the writ as an instrument of postconviction litigation was not foreseen when the common law deemed the writ competent to test only sentences under which the petitioner was then serving.[FN13]

FN13. "The writ [the narrow common law writ of habeas corpus which the states incorporated into their jurisprudence] **tested only the jurisdiction of the authority imposing restraint, and the concept of jurisdiction for this purpose was extremely limited.**" (Footnote omitted.) Reitz, "Federal Habeas Corpus: Postconviction Remedy for State Prisoners," 108 U.Pa.L.Rev. 461, 465–466 (1960).

That the scope of the writ has developed greatly with the exigencies of the time as a postconviction remedy seems so undeniable that extensive citation and comparison of cases might now well seem a needless exercise. There is no other comprehensive method of collateral attack in Pennsylvania. Thus this growth of the writ is not surprising or unwarranted in view of our continuing efforts to provide a full hearing for claims of federal constitutional violations and in the face of the present urgent necessity for a state postconviction avenue which will afford an adequate corrective process for hearing and determining alleged violations of federal constitutional guarantees. *See, e. g., Case v. State of Nebraska,* 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965); Reitz, Federal Habeas Corpus: Postconviction Remedy for State Prisoners, 108 U.Pa.L.Rev. 461, 465–66, 469–70 (1960); Meador, Accommodating State Criminal Procedure and Federal Postconviction Review, 50 A.B.A.J. 928, 929–30 (1964).

*Myers,* 213 A.2d at 619–20 (emphasis added) (some citations and footnotes omitted).

The General Assembly responded fairly promptly to the need for a new "state postconviction avenue," adopting the Post Conviction Hearing Act ("PCHA") in 1966. As this Court's own contemporaneous authority demonstrates, the legislative contribution was not designed to restrict or eliminate that which had been afforded to convicted prisoners under common law habeas corpus; rather, the statute addressed the necessity for a new review paradigm in response to new and literally unprecedented federal commands in matters affecting criminal procedure, many of which were deemed retroactive, thus unsettling final convictions. A proper historical understanding, then, requires recognition that the PCHA, and now the PCRA, is remarkable not in how it **restricts** convicted criminals, but in the broad avenue of collateral attack it **accommodates and permits.** Given this history, there is nothing at all improper in the General Assembly attempting to normalize, regularize, and expedite review. Even with the time-bar, statutory post-conviction review in this Commonwealth is expansive, not cramped or unduly restrictive. The statute need not apologize for itself; and we need not construe it to mean something other than it says to accommodate a lachrymose outlier situation. This is so, despite the intemperate and unfortunate charges leveled by the Dissent against this Court's jurisprudence.

Justice BAER, dissenting.

Ever since this Court construed the time limits provided by the Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et seq.* (PCRA), as "jurisdictional" in *Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638, 641 (1998), it has felt compelled to tolerate constitutional violation upon constitutional violation, sacrificing fundamental rights at the altar of finality. The United States and Pennsylvania Constitutions, however, do not countenance finality at the expense of constitutional rights; rather, as a matter of due process, they promise convicted

defendants one substantive appeal of their convictions,[1] *see Commonwealth v. Wilkerson*, 490 Pa. 296, 416 A.2d 477 (1980),[2] and also the effective assistance of counsel through that appeal, *see Commonwealth v. Liebel*, 573 Pa. 375, 825 A.2d 630, 635 (2003).[3] In the instant case, the Majority nonetheless denies Appellant his constitutionally mandated direct appeal, citing ineffective assistance of counsel as though it justified the deprivation of this right. *But see Evitts v. Lucey*, 469 U.S. 387, 399–400, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)("A system of appeal as of right is established precisely to assure that only those who are validly convicted have their freedom drastically curtailed. *A state may not extinguish this right because another right of the appellant—the right to effective assistance of counsel—has been violated.*" (emphasis added)).

In his Concurring Opinion in *Commonwealth v. Hall*, 565 Pa. 92, 771 A.2d 1232 (2001), Justice Nigro expressed the

1. *See* PA. CONST. Art. V, § 9 ("There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.").

2. While the United States Constitution does not demand that states provide a forum for direct appeals of criminal convictions to raise claims of trial court error, "if a State has created appellate courts as an integral part of the system for finally adjudicating the guilt or innocence of a defendant, the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)(internal quotation marks and citation omitted).

3. Appellant's claim in this case sounds not in mere ineffectiveness but in constructive denial of counsel. *See Commonwealth v. Halley*, 582 Pa. 164, 870 A.2d 795, 801 (2005); *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564, 571 (1999)("[T]he failure to perfect a requested appeal is the functional equivalent of having no representation at all."). Accordingly, this Court must presume prejudice in counsel's failure to ensure that Appellant's appeal was considered on the merits by an appellate court, *see Commonwealth v. Haag*, 570 Pa. 289, 809 A.2d 271, 282–83 (2002), and Appellant need not demonstrate that the legal claims he sought to raise on appeal were meritorious. *Lantzy*, 736 A.2d at 572; *Wilkerson*, 416 A.2d at 479 ("[The] requirement that counsel protect the appellate right of an accused extends even to circumstances where the appeal is totally without merit.").

following reservation regarding our increasingly narrow reading of the time constraints under the PCRA:

> I am troubled by the prospect that a defendant who, for example, instructed counsel to file a direct appeal, was told by counsel that an appeal was being filed, was subsequently reassured by counsel that the appeal was filed, but later found out after the [PCRA's] one-year time limitation period expired that counsel never filed the appeal, is forever precluded from receiving at least one appellate review of his case. In my view, a rule that penalizes a defendant who reasonably relies in good faith upon his counsel to protect his appellate rights is contrary to the purpose of the PCRA, and such a defendant should be entitled to, at a bare minimum, one appellate review.

*Id.* at 1237 (Nigro, J., concurring). The instant case presents a circumstance materially identical to that foreseen by Justice Nigro, one in which Appellant was denied even one appellate review of his judgment of sentence through no fault of his own and due to no want of diligence in seeking to protect his appellate rights. While I do not dispute that our reading of the PCRA has, in effect, painted us into a corner in cases such as this, I do not believe that the General Assembly had the intent or authority[4] to eviscerate the commonlaw remedy of *habeas corpus* to the extent that relief is precluded under the facts of this case.[5] That being said, however, in this case,

---

**4.** Under our rules of statutory construction, we presume that the General Assembly does not intend to enact a law that violates the constitutions of the United States or Pennsylvania. *See* 1 Pa.C.S. § 1922(3).

**5.** *See Commonwealth v. Cruz,* 578 Pa. 263, 851 A.2d 870, 877 (2004)(acknowledging the statutory bar against post-conviction litigation of claims that were or could have been raised on direct appeal, but noting that, "by its effort to channel the broadest category of post-conviction claims into the statutorily prescribed procedures, the Legislature implemented a scheme that must necessarily be deemed to take into account facets of traditional *habeas corpus* jurisprudence"); *cf. Commonwealth ex rel. Levine v. Fair,* 394 Pa. 262, 146 A.2d 834 (1958)(finding that the Habeas Corpus Act of 1937 did not displace the more extensive *habeas corpus* remedy found at commonlaw, which "may issue in all sorts of cases where it is shown to the court that there is probable cause for believing that a person is restrained of his liberty unlawfully or against the due course of law"); *id.* at 846 ("The writ of *habeas corpus* in

Appellant fails to invoke *habeas corpus,* which I conclude in the following analysis would furnish an appropriate basis for relief. Instead, he argues exclusively that our misleading decision in *Commonwealth v. Murray,* 562 Pa. 1, 753 A.2d 201, 203 (2000), entitles him to relief. I believe that under the facts of this case, Appellant should prevail under *Murray,* and dissent from the Majority's ruling on that basis. I also take this opportunity to discuss our PCRA jurisprudence and *habeas corpus.*

I agree in large part with the Majority's recounting of the case. *See* Maj. Op. at 357–60, 943 A.2d at 266–67. The Majority acknowledges that *Murray* sent conflicting signals to litigants, on the one hand suggesting that the PCRA time limit begins to run upon the actual occurrence of finality of the judgment of sentence, but then suggesting, albeit in *dictum,* that the relevant limitations period did not begin to run until the Superior Court had quashed the appeal in question as untimely. In *Murray,* as the Majority notes, on either analysis the appellant was not entitled to relief, as his PCRA petition was untimely in either case. I disagree with the Majority, however, in refusing to acknowledge the inequity and thereby punishing Appellant for his fully justified reliance on *Murray* and its progeny.

In this Court's recent decision in *Commonwealth v. Bennett,* 593 Pa. 382, 930 A.2d 1264 (2007), among several factors that led us to find that the appellant had duly pleaded an exception to the PCRA's one-year time limit was what we held to be his reasonable reliance on an extant Superior Court practice, called "the extension theory," which we had invalidated during the pendency of Bennett's appeal but after his reliance on that practice. *See id.* at 1268–69 (citing *Commonwealth v. Robinson,* 575 Pa. 500, 837 A.2d 1157 (2003)(invalidating the extension theory)). In so doing, we recited a number of cases in

Pennsylvania may be molded to suit the exigencies of any particular case. It is an implied common-law power, not created by the *habeas corpus* act of February 18, 1785, 2 Sm.L. 275, sec. 13, but existing before and since the passage of that act in every court of record, invested with extensive appellate or supervisory jurisdiction; **and, in a proper case, it is always grantable** ...." (internal quotation marks omitted; emphasis added)).

which we had declined to foreclose review to petitioners who had a reasonable basis to believe that their actions were proper under then viable precedents. *Id.* (discussing *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003); *Commonwealth v. Hernandez*, 572 Pa. 477, 817 A.2d 479 (2003)).

While I agree with the Majority that *Murray* misstated the law in the passage relied upon by Appellant, the fact remains that the language was sufficiently misleading to fool not only Appellant, but also a distinguished panel of the Superior Court. *See Commonwealth v. Mazzarone*, 856 A.2d 1208 (Pa.Super.2004) (interpreting the same passage in *Murray* as binding precedent for precisely the proposition Appellant now asserts). As in *Bennett*, I would find that such reliance on then-valid law supports a grant of relief. Thus, I would apply the Majority opinion in this case solely prospectively, and afford Brown relief, rather than punish him for our error.

This case, however, presents an occasion that compels me to address the slow erosion of the rights once protected by the writ of *habeas corpus*, a problem that is neither faced nor remedied by such incremental, case-specific palliatives, as is suggested above to return Brown's appellate rights; and one that goes to the very heart of our PCRA jurisprudence. It is to this alarming diminution of fundamental rights that I now turn.

As noted, in *Evitts*, the United States Supreme Court held that, when counsel fails to perfect an appeal for a client who seeks it in a criminal case, his representation is constitutionally inadequate.[6] In this case, there is no dispute that Appellant sought to appeal his conviction. Moreover, there is no dispute that it was counsel's failure to file a written post-sentence

**6.** In *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Court qualified this holding by observing that even when an appeal has not been filed, the possibility remains that counsel had a basis for declining to file and requiring that possibility to be examined where called for by the circumstances of the case. Clearly, this is not such a case, because it presents not the failure to file an appeal, but the failure to comply with governing rules to perfect that appeal.

motion that caused the time limit for an appeal to lapse. In the Majority's view, this resulted in forfeiture of Appellant's constitutional right to direct appellate review of his criminal conviction. This is necessitated, the Majority holds, because our PCRA, whose clear time limits have been held by this Court to be jurisdictional, *see Peterkin,* 554 Pa. 547, 722 A.2d 638, slammed the door on Appellant's appeal before Appellant even realized that his direct appellate process was fatally flawed and destined for procedural dismissal.

Appellant failed to understand his predicament because Appellant's *counsel* failed to understand his predicament; Appellant's error, on this account, lay in his faith that counsel understood the governing law. It is not his counsel, however, who pays the price. Where counsel's constitutionally defective representation results in forfeiture of a criminal defendant's constitutional right to a direct appeal, and where the loss cannot be fairly traceable to the defendant's own want of diligence in seeing to his own interests, I simply cannot accept that the law, be it statutory or decisional, denies that defendant's constitutionally derived fundamental right to appeal his conviction. *See Evitts,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821.

Vindication of this fundamental right to one appeal and to effective representation of counsel through that event can occur either through the PCRA or around it, but it is simply inescapable that a solution must be found that entails restoration of Appellant's right to a direct appeal. Since this Court long has construed the PCRA to reflect the General Assembly's intention to encompass the broadest possible category of collateral relief—including *habeas corpus, coram nobis,* and any other commonlaw remedies—within the Act's confines, *see Commonwealth v. Cruz,* 578 Pa. 263, 851 A.2d 870, 877 (2004), I first consider whether relief is available through the PCRA.

This examination requires very little effort, however, because our caselaw and the PCRA facially preclude relief in this case. Just as the Majority holds, the one-year time limit for filing a PCRA petition commences not upon expiration of a faultily pursued direct appeal, but, rather, upon the finality *in*

*fact* of the judgment of sentence. *See* Maj. Op. at 267 (citing *Murray,* 753 A.2d at 203); 42 Pa.C.S. § 9545(b)(3). In this case, notwithstanding Appellant's argument to the contrary, his judgment of sentence became final thirty days after the date by which counsel was bound to file with the trial court, in writing, any post-sentence motion he sought to forward. He failed entirely to do so, however, and that omission triggered the running of the PCRA clock.[7] Consequently, Appellant's PCRA petition was untimely under the one-year rule, just as the Superior Court noted in quashing his appeal and this Court's Majority ably explains.[8]

Thus, bearing in mind the foregoing constitutional rights that hang in the balance, Appellant simply must be entitled to relief outside the PCRA, for while this Court has acknowledged that the General Assembly intended with the Act to sweep into its purview as many aspects of collateral review as possible, neither that body nor this Court has the authority to deny federal constitutional rights. *Commonwealth v. Cruz,* 578 Pa. 263, 851 A.2d 870, 877 (2004). Moreover, we have held that there remain cases that fall outside the PCRA's ambit and thus are subject to traditional *habeas corpus* analysis. *Commonwealth v. West,* 595 Pa. 483, 938 A.2d 1034 (2007)(citing 42 Pa.C.S. § 6501); *Peterkin,* 554 Pa. 547, 722 A.2d 638. In this regard, our recent decisions in *Commonwealth v. Judge,* 591 Pa. 126, 916 A.2d 511 (2007), and *West* are instructive.

7. The trial court's eventual order purporting to deny Appellant's oral post-sentence motion was a nullity and does not alter this analysis. Presumably effective counsel would have understood that post-trial motions must be in writing, and would have filed at least a protective PCRA petition within the one-year time limit.

8. Of course, the PCRA does provide enumerated exceptions to its one-year time limit, *see* 42 Pa.C.S. § 9545(b)(1), but they must be pleaded and proved; this Court does not raise any exception *sua sponte* on behalf of litigants. Appellant pleads no exception, maintaining instead and exclusively that this Court's decision in *Commonwealth v. Murray,* 562 Pa. 1, 753 A.2d 201 (2000), renders his petition timely within the one-year time limit, thus requiring no exception. Accordingly, I need go no further in concluding that Appellant's petition was untimely under the PCRA, subject to no raised exception, and that the courts below therefore lacked jurisdiction to address it on the merits.

In *Judge*, we held that *habeas corpus*, rather than the PCRA, applied when a petitioner challenged his incarceration not on the basis that he was actually innocent or that his sentence was illegal, *see* 42 Pa.C.S. § 9542 (reciting these as the injuries the PCRA is designed to address), but rather on the grounds that his deportation from Canada to Pennsylvania to serve his capital sentence violated international law. This Court began by acknowledging the intended breadth of the PCRA's sweep. We observed that so broadly did the act sweep that, beyond mere assertions regarding guilt or innocence, claims of ineffective assistance arising from counsel's failure to perfect a direct appeal also were "cognizable" under the act. *Judge*, 916 A.2d at 520 (citing *Lantzy*, 736 A.2d at 569–70). We acknowledged, however, that "the boundaries of cognizable claims under the PCRA can only be extended so far as is consistent with the purposes of the statute," and concluded that the petitioner's claim, derived from international law, fell outside "the intended scope of the PCRA." *Id.* Thus, we agreed with the petitioner in that case that traditional principles of *habeas corpus*, rather than the statutory remedy furnished by the PCRA, applied to the case, and analyzed the merits of petitioner's case on that basis, ultimately denying relief.

Similarly, in *West* this Court found another scenario as to which the PCRA provided no solution, and analyzed it instead pursuant to principles of substantive due process by way of *habeas corpus*. In that case, due to an administrative oversight, petitioner had managed to remain free for nine years following the imposition of a sentence of imprisonment for a criminal conviction. When the error finally was discovered and brought to the attention of the sentencing court, an arrest warrant was issued. Soon thereafter, petitioner was taken into custody, whereupon he challenged his incarceration based upon what he averred were violations of his substantive due process rights under the Fourteenth Amendment to the United States Constitution. He brought these claims in filings that jointly invoked, and alternatively argued, principles of *habeas corpus* and the PCRA.

As in *Judge*, we emphasized that "the PCRA subsumes all forms of collateral relief, including *habeas corpus*, **to the extent a remedy is available under such enactment.**" *West*, 938 A.2d 1034, (citing *Peterkin*, 722 A.2d at 640)(emphasis in *West* ). Having so established our guiding principles, howeverer, we emphasized that neither had the writ of *habeas corpus* been suspended, nor had we ever held that the remedy "does not exist for the rare instance where the PCRA offers no remedy." *Id.* Thus, in *West*, as in *Judge*, we analyzed the merits of the claim at hand and denied relief, not pursuant to the PCRA but under *habeas corpus.*

From these cases I conclude that the critical question presented in this case and others of its ilk must concern what constitutes the "availability" of a remedy (or the "cognizability" of a claim) under the PCRA. I cannot dispute that this case is distinguishable from *Judge* and *West* inasmuch as the General Assembly clearly sought to encompass allegations of ineffectiveness of counsel within the remedies—and subject to the restrictions—established by the PCRA, as we held in *Lantzy.* Where I believe the Majority errs—and where I concede this Court has, in the past, erred as well, even in cases I have joined—is in defining as cognizable *all* claims that fall within a category as to which the *vast majority* of such claims will become apparent within the time limit provided by the PCRA.[9] Thus, we have effectively held that, because garden-variety ineffective assistance of counsel will emerge to support a viable PCRA claim well within the stringent time limits of the PCRA, and because those sorts of claims are clearly intended to be encompassed by the PCRA, *all* ineffective assistance of counsel claims necessarily are cognizable

**9.** *See, e.g., Commonwealth v. Bryant*, 579 Pa. 119, 855 A.2d 726, 735 (2004)(finding cognizable under the PCRA claims of ineffectiveness of trial and direct appellate counsel citing, 42 Pa.C.S. § 9543(a)(2)(ii)); *Commonwealth v. Liebel*, 573 Pa. 375, 825 A.2d 630, 636 (2003)(finding claim of ineffective assistance of counsel for failure to file a petition for allowance of appeal to be cognizable under PCRA); *Commonwealth ex rel. Dadario v. Goldberg*, 565 Pa. 280, 773 A.2d 126, 129–130 (2001)(holding all constitutionally-cognizable claims of ineffective assistance of counsel, including those relating to the plea bargaining process, are cognizable under the PCRA).

under the PCRA and therefore are subject to its time limits and not amenable to any relief outside the PCRA. In essence, it is a one-size-fits-all jurisprudence that disregards the very real prospect of individual injustice, as in this case where Appellant is acknowledged by all to be blameless, yet nevertheless must accept that his blamelessness will not salvage the direct appeal to which he is constitutionally entitled; at least absent federal court intervention.[10]

It should go without saying that this *status quo* is unsustainable to the extent it runs afoul of overriding sources of law such as the Pennsylvania and United States Constitutions, the supremacy of which is beyond cavil. Pursuant to the principles outlined and cases cited above, see *Evitts*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821; these hallowed charters secure a fundamental right in Pennsylvania state criminal proceedings to a direct appeal of a conviction and to due process in the provision of that direct appeal, including assuring the effective assistance of counsel. Where statutory law, or our interpretation of same, leads to manifest constitutional violations, either the statute or our interpretation must yield.

It would be more consonant with our constitutional duty to determine the availability of PCRA relief not exclusively as a function of categories defined too broadly to remain sensitive to anomalous cases—such as *all* ineffectiveness of counsel—but rather with sufficient care to accommodate certain recurring problems. The instant case is one such case, and, indeed, is emblematic of the type of case Pennsylvania courts see all too often, where diligent criminal defendants are denied their constitutional rights to direct appeal and the effective assistance of appellate counsel because of the continuance of ineffective assistance of counsel and the passage of time. We should not be construing every sort of collateral claim as "cognizable" under the PCRA, and therefore subject to its

10. I acknowledged above that our Court has painted itself into the proverbial corner, and note here that perhaps it will take federal intervention to remove us from this interminable dilemma. Relying on federal authorities to protect acknowledged constitutional rights seems to me to be an abrogation of our obligations.

one-year time limitations and limited exceptions, when to do so violates our constitutional duties.[11]

I do not believe, however, that the solution is to overturn our prior precedent. Indeed, it is our *habeas corpus* precedent of recent vintage that provides the solution. As in *Judge* and *West,* I believe that the PCRA simply is an inadequate device to address constructive abandonment of counsel when it leads to complete forfeiture of direct appellate rights due to a failure to seek or perfect a desired appeal—at least where such abandonment could not reasonably have been discovered by a petitioner until after the PCRA's one-year time limit had run. Such a claim simply should not be deemed "cognizable" under the PCRA; it simply makes no sense to suggest that it is when to do so is tantamount to defining "cognizable" as "available, but not to you." Accordingly, I would find such a claim subject to review as a matter of *habeas corpus.*

In this case, it is undisputed that counsel's failure properly to understand the law, or failure to abide by it, led to the forfeiture of defendant's right to a direct appeal of his conviction. Where counsel's dereliction costs his client a constitutionally sanctioned direct appeal, counsel is ineffective, and the proper remedy is to restore his direct appeal rights *nunc pro tunc.* While that remedy has not been sought here, I believe that is because this Court has signaled continuously and unremittingly its unwillingness to consider such arguments, a position that is constitutionally unsustainable, and thus should be abandoned. When next a party seeks relief under these circumstances and raising these constitutional arguments, I would grant relief.

---

11. Nor would vindicating the right to appeal in this fashion overburden the courts. While this occurrence is too common, it is not so common that it will be unduly burdensome to determine where such a claim has merit and where it does not. Courts are quite practiced at identifying and swiftly dispensing with frivolous petitions. Indeed, this is what we do when we regularly dismiss untimely multiple PCRA petitions.