J-S05005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRANKLIN LUTHER JACKSON, | |
| Appellant | No. 370 MDA 2015 |

Appeal from the PCRA Order Entered February 11, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005374-2006

BEFORE: BENDER, P.J.E., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED JANUARY 12, 2016**

Appellant, Franklin Luther Jackson, appeals *pro se* from the post-conviction court's February 11, 2015 order denying his petition for relief filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9545. After careful review, we affirm.

The facts of this case were set forth by the trial court, and quoted by this Court in a published opinion affirming Appellant's judgment of sentence, as follows:

> Members of [Appellant's] group got into a verbal dispute with the members of another group. The next day someone fired a shotgun through the front door of the residence where [Appellant] and co-defendant lived on South Queen Street. [Appellant] suspected that the members of the other group with whom they had a dispute were the perpetrators of this shooting.

---

Retired Senior Judge assigned to the Superior Court.

The following morning, co-defendant Troy Gellespie went out looking for the members of the other group. Gellispie located a member of the other group at a residence located several blocks away on South Queen Street. Gellispie called back to the residence he shared with [Appellant] to arrange for [Appellant] and others who were present at [Appellant's] home to come to this location with guns to get revenge for the previous night's shooting through their door. [Appellant] directed the other occupants of the home to obtain their weapons, and proceeded to drive them to a location back in an alley half a block from where co-defendant Gellispie had indicated the other group would be. [Appellant] gave guns to the other occupants of the vehicle, and directed them to go down the alley to meet with Gellispie.

[Appellant and his co-defendant] believed that an individual called M–Dot was the one who fired the shotgun through their door. M–Dot was not present with the other group which had been located by co-defendant.... However, his brother, Deo Garcia, was seated on the front porch of a residence on South Queen Street. Also present was his sister's husband, who everyone agrees had no involvement in the previous conflicts between the two groups.

When the individuals who were brought to the scene by [Appellant] met co-defendant ..., they began shooting at Deo Garcia. Deo Garcia pulled out his own gun and returned the fire. Chris Butler, Deo's sister's husband, attempted to duck behind a parked vehicle. Unfortunately, he was hit right between the eyes by one of the shots and died. The shooters then fled back to the vehicle were [Appellant] was waiting for them, and [Appellant] drove them back to his residence. On the way back, one of [Appellant's] group discarded his weapon. When [Appellant and his co-defendant] arrived back at their residence[,] the shooters attempted to conceal their involvement in the shooting by washing their persons, wiping off weapons, etc. Members of the group went back and picked up the weapon which had been discarded and returned to the house where efforts were made to remove any indication that [the gun] was [used] in the shooting.

The trial was somewhat complicated by the fact that many of the Commonwealth witnesses gave testimony that was contradictory to their previous statements to the police. The Commonwealth called two individuals who happened to be present at the time of the shooting because they were

attempting to buy drugs from Deo Garcia. Because their testimony differed from their earlier statements[,] they did not [aid] the Commonwealth's case. The Commonwealth also called at least one witness who was probably one of the individuals who was in [Appellant's] car and took part in the shooting. However, the Commonwealth could not prove that at the time of his testimony, and his actual testimony was again detrimental to the Commonwealth's case.

The Commonwealth did have the testimony of Desiree Garcia, the wife of the murder victim, Chris Butler. However, her initial report of the crime attempted to conceal her brother, Deo Garcia's, role in the shooting. Therefore, she described another individual to the police. The police subsequently found the individual she described, but were able to establish that [the] individual was in jail in Philadelphia at the time of the shooting.... Therefore, Desiree Garcia's testimony was flawed by this misdirection of the truth.

Fortunately for the Commonwealth, two witnesses that the Commonwealth originally did not intend to call saved their case. The Commonwealth had not intended to call Deo Garcia because of his extensive criminal record, his probable involvement in the shooting into the co-defendants' residence the night before, and his lack of cooperation with the police investigation. However, when the Commonwealth's other witnesses "went south," the Commonwealth was essentially forced to call Deo Garcia. To the Commonwealth's surprise, he turned out to be an excellent witness, particularly at describing what happened at the scene of the crime when the shooting was [occurring.] However, even Deo Garcia didn't really involve [Appellant] in the crime since he was not one of the shooters, but had instead remained at a location a half block away where he was not visible to the victims of the shooting.

Shannon Stuart was also charged with Homicide in this case. However, he had fled to Georgia prior to the charges being filed, and therefore, [he] had never been arrested. Fortunately for the Commonwealth, he was picked up in Georgia on the first day of trial. The Commonwealth sent people to interview him in Georgia, and he confessed [to] his involvement, agreed to testify for the Commonwealth, waived extradition, and was immediately brought back to Pennsylvania. The court then appointed counsel for Shannon Stuart. Counsel worked out a plea agreement with the District Attorney, whereby the charge of First Degree

Murder[, which was lodged] against him was dropped, and he agreed to testify for the Commonwealth.

It is noted that [both Appellant and Gillespie] objected to Shannon Stuart's testimony on the basis that they hadn't received notice prior to trial. However, it is obvious the Commonwealth couldn't [have given] the defense notice before trial when the Commonwealth itself didn't know that Stuart would testify prior to trial.

It is noted that the Commonwealth did inform the defense as soon as it became known that Stuart had been arrested and agreed to cooperate. It is further noted that prior to Stuart's testimony defense counsel [was] given the opportunity to review the statement that Stuart had given to the police at the time of his arrest. Therefore, [the trial court ruled] there was no discovery violation as the defense argued.

Stuart then provided the testimony that proved [Appellant's] involvement in the crime. Stuart testified that he was one of the people present at the residence of [Appellant] and [co-defendant] Gellispie when Gellispie called and said that he had located the group that had messed with them. Stuart described [Appellant] as the one who directed the gathering of weapons by the rest of the group and drove them to the alley a half block from where the victim was shot. Stuart also stated that [Appellant] directed the passengers in the car to take the weapons, proceed down the alley to meet up with Gellispie, and do what they came for. Stuart also described how the shooters fled back to [Appellant's] car where he was waiting for them. Stuart further described the efforts made to conceal evidence, which he said was directed by [Appellant].

*Commonwealth v. Jackson*, 947 A.2d 1260, 1261-63 (Pa. Super. 2008) (quoting Trial Court Opinion, 9/17/07, at 1-5).

Based on this evidence, the jury convicted Appellant of third-degree murder. He was sentenced on April 30, 2007, to an aggregate term of 20 to 40 years' incarceration. This Court affirmed his judgment of sentence on April 30, 2008. *See id.* Appellant did not file a petition for permission to

appeal to our Supreme Court and, thus, his judgment of sentence became final on May 30, 2008.  **See** 42 Pa.C.S. § 9545(b)(3) (stating that judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); Pa.R.A.P. 1113(a) (directing that "a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days of the entry of the order of the Superior Court sought to be reviewed").

The PCRA court detailed the subsequent procedural history of Appellant's case, as follows:

> On April 8, 2009, [Appellant] filed a Petition for Post Conviction Relief.  The Court appointed counsel, and after a hearing, denied [Appellant's] PCRA petition on June 30, 2009. [Appellant] filed [a] Notice of Appeal to the Superior Court on July 27, 2009, and the Superior Court affirmed on March 12, 2010…. [**Commonwealth v. Jackson**, 996 A.2d 545 (Pa. Super. 2010) (unpublished memorandum)].  [Appellant] filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court on November 17, 2010.  That petition was denied on April 7, 2011…. [**Commonwealth v. Jackson**, 20 A.3d 1210 (Pa. 2011)].
>
> On February 16, 2012, [Appellant] filed a Writ of *Habeas Corpus*.  The Court, considering [Appellant's] writ to be a PCRA petition, denied relief on March 5, 2012.
>
> [Appellant] filed [the instant] PCRA petition on August 19, 2013.  The case was reassigned to the undersigned Judge on August 20, 2013.

PCRA Court Order & Opinion Denying Petition (PCO I), 2/11/15, at 1-2.

The PCRA court appointed three successive attorneys to represent Appellant in litigating the instant petition, two of whom withdrew due to conflicts with Appellant.  Appellant's third attorney withdrew after Appellant

- 5 -

indicated his unhappiness with counsel's representation and expressed a desire to proceed *pro se*. **See id.** at 2. At a hearing in August of 2014, the court granted Appellant's request to proceed *pro se* and scheduled the PCRA hearing for October 21, 2014.[1] On that date, the court assessed the timeliness of Appellant's petition, ultimately concluding that he had pled and proven the applicability of the after-discovered fact exception of 42 Pa.C.S. § 9545(b)(1)(ii), discussed in more detail *infra*. **See** N.T. Hearing, 10/21/14, at 16. On December 15, 2014, the court scheduled a hearing to assess the merits of that after-discovered evidence claim.

> The general gist of the testimony at the hearing was that Shannon Stuart's … girlfriend [at the time of the murder and Appellant's trial], Mandy Keiser, would provide testimony [at a new trial] showing Shannon Stuart lied on the witness stand at Appellant's trial. At trial, Mr. Stuart testified that he attempted to fire his gun [at the scene of the murder], but that it jammed, so he never actually fired a shot. N.T. 12/15/2014 at 14. However, at the PCRA hearing, Ms. Keiser testified that Mr. Stuart told her that his gun did not jam and that he fired the shot that killed the victim. Id. at 15. Ms. Keiser's testimony was not very consistent and was rather confusing at times. She indicated that Mr. Stuart had told her numerous stories about what happened on the night of the homicide, but she was adamant that she told a private investigator, before trial, that Mr. Stuart fired his weapon. Id. The private investigator's report indicates that he did speak with Ms. Keiser, but she stated that Mr. Stuart "would never commit to actually shooting a weapon during the incident." Id. at 33.

_____

[1] The hearing was a combined proceeding to address both Appellant's petition, and a similar petition filed by his co-defendant, Troy Gellispie. Gellispie was represented by counsel during the PCRA proceedings.

PCRA Court Pa.R.A.P. 1925(a) Opinion (PCO II), 4/6/15, at 2-3. Appellant also argued that his trial counsel was ineffective for not calling Ms. Keiser as a witness, when counsel knew about Ms. Keiser's statement to the private investigator that Mr. Stuart admitted to firing his gun at the murder scene.

On February 11, 2015, the PCRA court issued an order and opinion denying Appellant's petition. Appellant filed a timely *pro se* notice of appeal, and also timely complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Therein, he preserved the following claims for our review:

> 1.) This Honorable Court erred in not granting [Appellant's] request of a new trial based upon after discovered evidence relating to Mandy Keiser, the girlfriend of Shannon Stuart, a material witness for the Commonwealth who told her about the events that took place the day of the incident.
>
> 2.) This Honorable Court erred in denying [Appellant's] ineffective [assistance] of counsel claim [based] on a statement he withheld for over seven and one half years.
>
> 3.) This Honorable Court erred in disregarding [Appellant's] claim of actual innocence due to the testimony of Mandy Keiser.

Appellant's Rule 1925(b) Statement, 3/27/15, at 1.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001).

Initially, we must assess the timeliness of Appellant's petition, as it is well-settled that "[t]he time requirements established by the PCRA are jurisdictional in nature; consequently, the Pennsylvania courts may not entertain untimely petitions." ***Commonwealth v. Edmiston***, 65 A.3d 339, 346 (Pa. 2013) (citing ***Commonwealth v. Watts***, 23 A.3d 980 (Pa. 2011); ***Commonwealth v. Brown***, 943 A.2d 264, 267 (Pa. 2008); ***Commonwealth v. Robinson***, 837 A.2d 1157, 1161 (Pa. 2003)). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies. That section states, in relevant part:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final on May 30, 2008; thus, he had until May 30, 2009, to file a timely petition. Consequently, his petition filed in August of 2013, is facially untimely and, for this Court to have jurisdiction to review the merits of his after-discovered evidence or IAC claims, Appellant has to prove that he meets one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b).

In his brief to this Court, Appellant does not argue, let alone prove, the applicability of any timeliness exception set forth *supra*.[2] Instead, he attempts to argue the merits of his after-discovered evidence claim, which is not appropriate when attempting to satisfy the timeliness exception of section 9545(b)(1)(ii). **See Bennett**, 930 A.2d at 1270–72. Additionally, Appellant's after-discovered evidence argument on appeal substantially differs from that which he presented in his PCRA petition, or from any

---

[2] We also note that even if Appellant had asserted an exception herein, we would conclude that he waived any such claim by not specifically setting it forth in his Rule 1925(b) statement. **See Commonwealth v. Butler**, 812 A.2d 631, 633-634 (Pa. 2002) ("PCRA appellants, in order to preserve their claims for appellate review, must comply whenever the PCRA court orders them to file a Statement of Matters Complained of on Appeal under Rule 1925). Accordingly, any issues not raised in a Rule 1925(b) statement are waived.") (citing **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998)).

argument asserted at the PCRA hearing. Specifically, Appellant presents the novel argument that he is entitled to a new trial because Ms. Keiser testified at the hearing that "Mr. Stuart told [her Appellant] had nothing to do [the murder] at all[.]" Appellant's Brief at 10.

Curiously, this testimony is not contained in the transcript of the PCRA hearing. Appellant explains this omission by alleging that the record was "tampered with on purpose" and he asks this Court to remand for the PCRA court to recreate the record and include that ostensibly omitted portion of Ms. Keiser's testimony.[3] However, he offers no explanation of when he first realized this purported error in the transcripts, or why he could not have raised this transcription error before the PCRA court, at the very least in his Rule 1925(b) statement, to allow the court to comment on this claim in its opinion.[4] Appellant also did not assert in his Rule 1925(b) statement that Ms. Keiser's purported testimony, as he now claims to recall it, satisfies a timeliness exception, or even that it warrants a new trial. Based on these circumstances, we conclude that Appellant has not proven the applicability of

---

[3] On December 2, 2015, Appellant filed with this Court a separate motion asking us to remand his case to permit the PCRA court to correct this ostensible error in the transcript. Based on our discussion herein, we deny that motion.

[4] The record demonstrates that Appellant filed a motion for transcripts on February 26, 2015, which was granted on March 4, 2015. His Rule 1925(b) statement was filed on March 27, 2015. Appellant does not claim that he received the transcripts after he filed his Rule 1925(b) statement.

any timeliness exception, nor convinced us that he timely raised the issue of the alleged transcription error to warrant our remanding his case.

Nevertheless, we note that even if we accepted Appellant's claim that Ms. Keiser testified at the PCRA hearing that Mr. Stuart told her that Appellant had no involvement in the shooting, *and* we concluded that that claim satisfied the after-discovered fact exception of section 9545(b)(1)(ii), we would not grant Appellant the relief of a new trial. As Appellant acknowledges,

> [t]o obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Pagan*, 950 A.2d 270, 292 (2008) (citations omitted).

Here, it is clear that Ms. Keiser's purported PCRA hearing testimony would be used solely to impeach Mr. Stuart's credibility. While Appellant disagrees, and relies on *Commonwealth v. McCracken*, 659 A.2d 541 (Pa. 1995), we find that case distinguishable. There, McCracken was convicted of murder and robbery based on circumstantial evidence, the most compelling of which was the testimony of Michael Aldridge, who was the only witness that identified Appellant as being the perpetrator of those crimes. *See id.* at 542-543. After McCracken was convicted, however, Aldridge recanted his testimony, stating that he lied at trial and identified Appellant because "detectives kept repeating [McCracken's] name to him and suggesting

- 11 -

[McCracken] was the perpetrator to the extent that he began to believe [McCracken] was the perpetrator." *Id.* at 544. Our Supreme Court ultimately held "that the recantation of Michael Aldridge fits squarely within the test for after-discovered evidence." *Id.* at 545. The Court explained, in pertinent part, that

> Aldridge's recantation is not merely cumulative or corroborative given the tenuous nature of the circumstantial evidence connecting Appellant to the crime and the inability of any other witness to make a positive identification of the perpetrator. In this case, where the only Commonwealth witness who identified the perpetrator has recanted his testimony, such evidence cannot be considered cumulative or corroborative because the defendant claimed that he did not commit the crime in question. This was the essence of [McCracken's] defense and the ultimate question in [McCracken's] trial. Thus, Aldridge's recantation is neither cumulative, corroborative, nor for impeachment purposes.

*Id.*

In this case, we acknowledge that Appellant was convicted based on circumstantial evidence, the strongest of which was Mr. Stuart's testimony explaining Appellant's involvement in the crime. However, Mandy Keiser's proposed testimony that Mr. Stuart told her that Appellant was not involved in the crime is *not* recantation evidence; it is evidence by a third-party that would simply be used to impeach Mr. Stuart, who presumably would again testify to Appellant's involvement. Because Mr. Stuart has not, himself, recanted his testimony, ***McCracken*** would not compel us to grant Appellant

- 12 -

a new trial, even had he satisfied a timeliness exception based on Ms. Keiser's purported PCRA hearing testimony.[5]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2016

---

[5] We reiterate that Appellant contends that Ms. Keiser stated at the PCRA hearing that "Stuart told [Ms. Keiser that] Appellant had no involvement with [the] incident." Appellant's Brief at 14. In support of this claim, he attaches to his brief affidavits from several individuals who claim they were at the hearing and heard Ms. Keiser testify in this regard. One of those affidavits is from Ms. Keiser herself, and actually calls into question Appellant's characterization of her allegedly omitted PCRA hearing testimony. Namely, Ms. Keiser attests that she stated at the PCRA hearing that, "[i]n [Mr. Stuart's] story of the incident[,] he did not include [Appellant's] name[] or state that [Appellant] had any involvement." *See* Appellant's Brief at "Exhibit D." Mr. Stuart's *not mentioning* Appellant's name to Ms. Keiser when discussing the shooting is very different from Mr. Stuart's *expressly stating* that Appellant was not involved. Thus, Ms. Keiser's affidavit indicates that her proposed testimony would offer even weaker impeachment evidence than Appellant suggests herein.