**[J-116-2019] [MO: Wecht, J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 8 EAP 2019 |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on |
| | : | 10/29/2018 at No. 250 EDA 2018 |
| v. | : | reversing the Order entered on |
| | : | 12/14/2017 and remanding to the |
| | : | Court of Common Pleas, |
| ELWOOD SMALL, | : | Philadelphia County, Criminal |
| | : | Division at No. CP-51-CR-0521601- |
| Appellant | : | 1982. |
| | : | |
| | : | SUBMITTED: November 18, 2019 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE DOUGHERTY**                                        **DECIDED: October 1, 2020**

I concur in the result reached by the majority. In my view, however, this result is simply warranted by the glaring untimeliness of Small's PCRA[1] petition. More specifically, I agree with the Superior Court's conclusion that, "even if Bell's PCRA testimony contained [newly discovered] facts, and [Small] could avail himself of [*Commonwealth v. Burton*, 158 A.3d 618 (Pa. 2017)], he failed to comply with [S]ection 9545(b)(2) of the PCRA." *Commonwealth v. Small*, 250 EDA 2018, 2018 WL 5317602 at *4 (Pa. Super. filed Oct. 29, 2018) (unpublished memorandum). "The PCRA is the sole means of obtaining collateral relief on issues that are cognizable under the statute, *see* 42 Pa.C.S. §9542, and we have held on numerous occasions that the PCRA time restrictions are jurisdictional in nature; consequently, Pennsylvania courts may not entertain untimely

---

[1] Post Conviction Relief Act, 42 Pa.C.S. §§9541-9546.

PCRA petitions." *Commonwealth v. Watts*, 23 A.3d 980, 983 (Pa. 2011), *citing Commonwealth v. Robinson,* 837 A.2d 1157, 1161 (Pa. 2003); *Commonwealth v. Brown*, 943 A.2d 264, 267 (Pa. 2008). To establish jurisdiction, the PCRA requires a petitioner seeking relief under the newly discovered facts exception to, among other things, file a petition within sixty days of the date the claim could have been presented. *See* 42 Pa.C.S. §9545(b)(2).[2]

The present record demonstrates that on June 13, 2013, Small learned of the alleged "new facts" supporting his fourth PCRA petition — a 1998 Superior Court opinion which discussed the testimony of Small's co-defendant, Larry Bell, at Bell's PCRA hearing. *See* Appellant's Brief at 2. Under the express terms of the PCRA, Small was required to file his PRCA petition based on this "new fact" within sixty days of his learning about it, *i.e.*, on or before August 12, 2013. 42 Pa.C.S. §9545(b)(2). However, Small did not file his PCRA petition until July 23, 2014, nearly one year after the statutory deadline. Small was appointed PCRA counsel in September 2017, who obtained the transcript from Bell's PCRA hearing. Small then filed a counseled, amended PCRA petition on October 30, 2017, based on the alleged new facts deriving from Bell's testimony.

In claiming he satisfied Section 9545(b)(2)'s sixty-day filing deadline, Small asserts the time for filing ran from when he obtained the transcript of the proceeding to confirm and support his claim, as opposed to when he first learned of the existence of that potential evidence. Small thus alleges that the clock began to run when he filed his amended PCRA petition, rather than his initial petition, and that the former was timely

---

[2] As acknowledged by the majority, the PCRA was amended in 2018 in order to, *inter alia,* extend the deadline for filing a PCRA petition pursuant to the newly discovered facts exception from sixty days to one year. *See* Majority Op. at 7, n.2, *citing* 42 Pa.C.S. §9545(b)(2); Act of October 24, 2018, P.L. 894, No. 146, §2, (effective December 24, 2018). This amendment, however, does not apply to Small's 2014 petition or his 2017 amendment.

filed within sixty days of receiving that transcript. *See* Appellant's Brief at 21. The PCRA court agreed, opining Small was unaware of the content of Bell's testimony until he received the transcript. *See* Tr. Ct. Op. at 25. In reversing the PCRA court, the Superior Court determined Small's petition was untimely as it was not filed within sixty days of Small's actual discovery in June 2013 of the 1998 opinion discussing Bell's testimony. *See Small*, 2018 WL 5317602 at *4.

The divergent views of the lower tribunals demonstrate confusion regarding when Section 9545(b)(2) begins to run under the newly discovered fact exception, *i.e.*, is the sixty-day clock triggered when a petitioner first learns of the new fact or when he finally obtains additional evidence to confirm its existence? Fortunately, our precedents squarely resolve any confusion in this regard, and they do so in favor of the Superior Court's position in this matter.

We have long held that "a petition invoking any of the timeliness exceptions must be filed within 60 days of the date the claim **first could have been presented**." *Commonwealth v. Marshall*, 947 A.2d 714, 719-20 (Pa. 2008), *citing* 42 Pa.C.S. §9545(b) (emphasis added). More recently, we have explained that Section 9545(b)(2)'s sixty-day filing requirement is triggered on the date a petitioner receives "material **alerting him** of [a] claim[,]" not on the date he merely discovers "additional proof supporting the merits of [that] claim[.]" *Commonwealth v. Natividad*, 200 A.3d 11, 29 (Pa. 2019) (emphasis added); *see also Marshall*, 947 A.2d at 720 (the focus of the newly discovered fact exception is on "newly discovered facts, not on a newly discovered or newly willing source for previously known facts.") (emphasis omitted).

In applying the above standards to the present case, it is evident Small failed to satisfy the requirements of 42 Pa.C.S. §9545(b)(2), and therefore the PCRA court lacked jurisdiction over the petition. The transcript of Bell's PCRA hearing did not contain a fact

unknown to Small, but simply provided additional confirmation of the fact Small allegedly discovered on June 13, 2013, when he learned of the Superior Court's 1998 opinion. Moreover, Small first took action after his June 13, 2013 discovery, which belies his claim he was unaware of the "new fact" of Bell's testimony until after he received the transcript of Bell's PCRA hearing. The record is clear that, on June 28, 2013, just over two weeks after finding the Superior Court opinion, Small filed a motion in federal court for relief pursuant to Federal Rule of Civil Procedure 60(b) based on that newly discovered evidence. *See* Appellant's Brief at 16-17, *citing Small v. Gills,* No. 99-cv-03063, Doc. No. 24 (E.D.Pa. June 28, 2013). It is plainly apparent that Small discovered the alleged "new fact" as of June 13, 2013, and was thus required to file his PCRA petition on or before August 12, 2013 to comply with the jurisdictional PCRA time requirements. The additional support of the transcript did not act to restart the time within which Small could bring his PCRA claim. Accordingly, the PCRA court lacked jurisdiction to award relief due to the untimeliness of Small's petition, and the decision below should be affirmed on this basis alone.[3]

I respectfully dissent, however, from the majority's overly-expansive endeavor to "eradicate the public record presumption entirely." Majority Op. at 11. For one thing, the question upon which we granted review as to this issue is more limited than the majority suggests. Specifically, we granted review to consider, *inter alia*, whether "Bell's PCRA

---

[3] Curiously, although the majority acknowledges the Superior Court deemed Small's failure to comply with 42 Pa.C.S. §9545(b)(2) to be "another basis for reversal," Majority Op. at 9, the majority does not discuss this point further in its analysis. Instead, it agrees solely with a wholly separate basis for upholding the lower court — *i.e.*, that court's conclusion "Bell's 1993 PCRA testimony was materially similar to his trial presentation, and thus did not reveal any previously unknown facts." Majority Op. at 27. While I agree with the majority and the Superior Court that the record does not support Small's claim that the alleged new facts were unknown to him, I question the majority's decision to resolve the case on this basis rather than upon the straightforward ground that Small's petition was plainly untimely pursuant to Section 9545(b)(2).

testimony [was] 'unknown' to Small under [*Burton*.]" *Commonwealth v. Small*, 207 A.3d 289 (Pa. 2019) (*per curiam*). While I take no issue with the majority's discussion of *Burton* or even its conclusion that the "unknown" prong of 42 Pa.C.S. §9545(b)(1)(ii) "does not call for any assessment of whether the asserted [newly discovered] facts appear in the public record[,]" Majority Op. at 22, I cannot support the majority's unwarranted analysis of the statute's wholly separate "due diligence" prong.

"To qualify for an exception to the PCRA's time limitations under subsection 9545(b)(1)(ii), a petitioner need only establish that the facts upon which the claim is based were [(1)] unknown to him and [(2)] could not have been ascertained by the exercise of due diligence." *Burton*, 158 A.3d at 629. In other words, the statute imposes two independent requirements that a PCRA petitioner must overcome. In *Burton*, the Court focused exclusively upon the first requirement, *i.e.,* the "unknown" prong of the statute. *See, e.g.*, *id.* at 632 ("In requiring that the facts be **unknown to the petitioner**, the statute itself contains no exception, express **or** constructive, regarding information that is not of public record.") (emphasis in original). Likewise, after thoroughly tracing the origins of the public records presumption, the *Burton* majority revealed the presumption was born in *Commonwealth v. Lark*, 746 A.2d 585 (Pa. 2000). There, in a single footnote and with little accompanying analysis, the Court announced the presumption for the first time, and it did so based on the same assumption made in *Burton*: that it derives from the "unknown" prong of Section 9545(b)(1)(ii), rather than its alternative "due diligence prong." *See Lark*, 746 A.2d at 588, n.4 ("The statistics which comprise the study were of public record and **cannot be said to have been "unknown" to Appellant**. As such, this information does not fall within the purview of 42 Pa.C.S. §9545(b)(1)(ii).") (emphasis added).

Notwithstanding the *Burton* majority's rejection of the public record presumption for *pro se* incarcerated prisoners under the "unknown" prong of the statute, there are compelling reasons to believe the presumption is actually founded under the "due diligence" prong. Indeed, as Justice Baer explained in his dissenting opinion in *Burton*, which I joined, the presumption "appears to be based upon the legal fiction that if a fact is available through some public resource, it is then ascertainable through the exercise of due diligence." *Id.* at 640 n.4. Chief Justice Saylor adopts a similar view in this matter, and forwards a persuasive argument supporting this understanding. *See* Concurring and Dissenting Opinion (Saylor, C.J.) at 1-2 ("Clearly, the Legislature's prescription for diligence demonstrates its intention to incorporate a form of constructive notice into the statute, and I fail to see how an interpretation recognizing that, as a general rule, matters of public record can be discovered through a diligent inquiry distorts this legislative design or frustrates the legislative purpose.").

For my part, I am largely aligned with the view that the presumption emanates, if anywhere, from the due diligence prong of Section 9545(b)(1)(ii). It seems apparent to me that, if something is widely known or available in the public sphere, less diligence is required to find it, particularly where a petitioner is represented by counsel. *Accord* Commonwealth's Brief at 36 ("Due diligence certainly contemplates accessing relevant public records where the prisoner is able to do so through counsel. Indeed, that is implicit in the statutory obligation to exercise 'reasonable effort.'"), *citing Commonwealth v. Edmiston*, 65 A.3d 339, 348 (Pa. 2013). I also tend to agree with the Commonwealth that our recent decision in *Commonwealth v. Staton*, 184 A.3d 949 (Pa. 2018), strongly supports the notion that due diligence should be the focus in those matters that fall outside of *Burton*'s limited rule. In *Staton*, in an essentially unanimous opinion[4] authored by

---

[4] Justice Todd, the author of *Burton*, concurred only in the result in *Staton*.

Justice Mundy, we concluded that "although Staton initially filed the instant petition *pro se*, . . . unlike *Burton*, he has been represented by various attorneys at various points in the last decade." 184 A.3d at 957. Moreover, of particular relevance to the instant matter, we explained:

> *Burton* only pertains to the part of Section 9545(b)(1)(ii) relating to whether the facts were "unknown." This Court stressed that the due diligence requirement is separate and distinct from the discrete issue addressed in *Burton*. *See Burton*, 158 A.3d at 638 (stating, "[a]fter the PCRA court makes a determination as to the petitioner's knowledge, it should **then** proceed to consider whether, if the facts were unknown to the petitioner, the facts could have been ascertained by the exercise of due diligence, including an assessment of the petitioner's access to public records.") (emphasis added). Based on these considerations, we conclude Staton has not met his burden to show he could not have learned of these facts earlier with the exercise of due diligence.

*Id.* To me, *Staton* highlights the reality that we have for too long placed undue emphasis on the "unknown" prong of the statute, when we should have instead trained our attention on the "due diligence" prong.

Rather than tackle these colorable (if not correct) arguments head on, the majority sweeps them into a single footnote in a section of its opinion that precedes its actual legal analysis. *See* Majority Op. at 16 n.9. Therein, after contorting itself while attempting to distinguish *Staton*, the majority proceeds to summarily reject the entirety of the "due diligence" argument set forth above in one brief sentence: "To resurrect the public record presumption for *pro se* prisoners by deeming it an interpretation of a different statutory term would not only elevate form over substance, but would defeat the entire purpose of our decision in *Burton*." Majority Op. at 16 n.9. This conclusion is troubling, for at least three reasons.

First, as noted, Small did not seek allowance of appeal, and thus we did not grant allowance of appeal, to consider whether the public records presumption is more properly grounded in the "due diligence" prong of Section 9545(b)(1)(ii). On the contrary, the

limited issue before us here is whether "Bell's PCRA testimony [was] 'unknown' to Small under [*Burton*]?"  *Small*, 207 A.3d at 289.  Consequently, in my view, the majority's decision to declare that the public records presumption is unsustainable under the "due diligence" prong of the statute, in addition to being unsustainable under the "unknown" prong, improperly exceeds the bounds of the narrow question before us.

Second, I strongly disagree with the assertion that the Commonwealth's argument concerning the "due diligence" prong "elevate[s] form over substance[.]"  Majority Op. at 16 n.9.  In my view, the Commonwealth's argument merely reflects the reality that the statute contains **two** prongs, not one, and "that the due diligence requirement is separate and distinct from the discrete issue addressed in *Burton*."  *Staton*, 184 A.3d at 957.  As such, I do not believe it elevates form over substance to contend, as the Commonwealth does, that is entirely possible that an analysis of the "due diligence" prong might compel a different conclusion than we reached in *Burton*, which only considered the separate and discrete "unknown" prong.  *See, e.g.*, 1 Pa.C.S. §1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

Third, and finally, I cannot support the implication that we should be unconcerned about whether a separate statutory component yields a separate result simply because it "would defeat the entire purpose of our decision in *Burton*."  Majority Op. at 16 n.9.  Our only "purpose" in *Burton* was to interpret Section 9545(b)(1)(ii) — and, more precisely, the phrase "unknown to the petitioner" — so as to "ascertain and effectuate the intention of the General Assembly."  1 Pa.C.S. §1921(a).  Respectfully, whether our interpretation of the "due diligence" prong leads to a contrary result than we reached in *Burton* should have no bearing whatsoever on the purely legal question regarding the legislature's intent,

and the implicit suggestion that it is permissible to ignore statutory intent so as to protect "the purpose of our decision in *Burton*[,]" is worrisome.[5]

In sum, I concur in the result reached by the majority, but I dissent from its decision to address and summarily reject a separate issue of statutory construction not fairly presented in this appeal.[6]

---

[5] I am likewise troubled by the majority's cursory treatment of the principle of *stare decisis* and the canon of statutory construction codified at 1 Pa.C.S. §1922(4) ("when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language"). *See* Majority Op. at 25-26. Regarding the former, as this Court very recently explained, "changing course demands a special justification — over and above the belief that the precedent was wrongly decided — in matters involving statutory, as opposed to constitutional, construction." *Commonwealth v. Reid*, 752 CAP, 2020 WL 4803596 at *30 (Pa. Aug. 18, 2020), *citing, e.g., Commonwealth v. Doughty*, 126 A.3d 951, 955 (Pa. 2015) ("In cases resolved upon statutory interpretation, *stare decisis* does implicate greater sanctity because the legislature can prospectively amend the statute if it disagrees with a court's interpretation."); *Shambach v. Bickhart*, 845 A.2d 793, 807 (Pa. 2004) (Saylor, J., concurring) ("*[S]tare decisis* has 'special force' in matters of statutory ... construction [ ] because ... the legislat[ure] is free to correct any errant interpretation of its intentions[.]"); *In re Burtt's Estate*, 44 A.2d 670, 677 (Pa. 1945) ("A statutory construction, once made and followed, should never be altered upon the changed views of new personnel of the court."). And with respect to the latter, I find it a dangerous matter to so casually disregard a statutorily-crafted presumption solely on the basis that it would be unreasonable to "plac[e] the burden upon the General Assembly to detect our error and to marshal the resources to correct it." Majority Op. at 25. The legislature apparently does not share the majority's concern for its own competency and abilities in this regard, or else it would not have fashioned the presumption in the first place. More fundamentally, the majority's explanation flies in the face of our prior precedents interpreting the presumption. *See, e.g., Fonner v. Shandon, Inc.*, 724 A.2d 903, 906 (Pa. 1999) ("The failure of the General Assembly to change the law which has been interpreted by the courts creates a presumption that the interpretation was in accordance with the legislative intent; otherwise the General Assembly would have changed the law in a subsequent amendment.") (citation omitted). For these reasons, I cannot endorse the majority's blanket rejection of this statutory presumption, the only apparent purpose of which is to allow the majority to reach its desired result in this matter.

[6] Although I dissent from the majority's decision to abolish the public records presumption, I also observe its holding is not as drastic as it may appear at first glance. Notably, a careful reading of the opinion reveals that the majority only eliminates the "categorical rule of exclusion" created by the public records presumption, Majority Op. at 23, while leaving intact the possibility that where certain matters are so obviously reported in the

Justice Mundy joins this opinion.

---

public domain, a petitioner will be unlikely to surmount the "due diligence" prong of the statute. *See id.* at 23-24 (explaining that due diligence is "a flexible concept that varies within the context of a given case" and likely will not be satisfied where, for example, the public record was "widely reported in a newspaper or available online").