J-A11030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEIGH MORGAN CLICKETT | : | |
| | : | |
| Appellant | : | No. 1223 WDA 2022 |

Appeal from the Judgment of Sentence Entered September 28, 2022
In the Court of Common Pleas of Crawford County Criminal Division at
No(s): CP-20-CR-0000017-2021

BEFORE: BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.*

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: JULY 17, 2023**

Appellant, Ashleigh Morgan Clickett, appeals from the judgment of sentence of 12 to 60 months' incarceration, imposed after she was found to have violated her previous term of probation and it was revoked. Appellant contends that the trial court erred by finding her in violation of a condition of her probation that was imposed by a probation officer, rather than the court. After careful review, we affirm.

The trial court summarized the factual and procedural history of this case, as follows:

> [Appellant] negotiated a plea of guilty on August 30, 2021, to driving under the influence (DUI) - highest rate of alcohol, graded as a misdemeanor of the first degree (second offense). She received a 60[-]month sentence of county intermediate punishment (CIP) on November 23, 2021, consisting of[,] *inter alia*[,] 5 days of county incarceration, … and then intensive supervision after her release from any incarceration imposed in

---

* Retired Senior Judge assigned to the Superior Court.

her pending Venango County case [in which she had negotiated a guilty plea to DUI – highest rate of alcohol (third offense)]. Sentenced in that case on December 16, 2021, to serve a minimum term of one year less one day, she was released from the Venango County Prison after three months, and then resumed serving her CIP sentence in the instant case. On June 10, 2022, she was detained at the Crawford County Correctional Facility for alleged probation/parole/intermediate punishment violations.

[Appellant] had been ordered while on probation or parole, or under supervision, to comply with Rule 708 of the local Rules of Criminal Procedure, whose terms and conditions were incorporated by reference into the sentenc[ing] order. That rule provides in relevant part that "[t]he Defendant shall obey the law and be of good behavior generally." Cra.R.Crim.P. 708(A)(14); *cf.* 42 Pa.C.S.[] § 9754(b) ("The court shall attach reasonable conditions authorized by section 9763 (relating to conditions of probation) as it deems necessary to ensure or assist the defendant in leading a law-abiding life."). The notice of alleged violations (NOAV) filed when [Appellant] was detained alleged that she had violated subsection 14 of Rule 708(A) by harassing her probation supervisor, Kaylee Daly, after being specifically instructed by Matthew D. Pierce, Assistant Chief of the County's Adult Parole and Probation Department, not to contact Officer Daly. An addition to the NOAV filed on June 15, 2022, alleged violations of subsections 14 (for mental health incidents), 7 (smoking marijuana, etc.), 10 (failing to pay her outstanding balance of fees and costs), and 12 (not completing DDI school or drug & alcohol treatment) of Rule 708(A), as well as violating house arrest rules set forth in Rule 708(B).

At the **Gagnon II**[8] hearing held on September 28, 2022, [Appellant] was found to have violated her probation on the basis of her admissions, the testimony of Assistant Chief Pierce, and argument of counsel. Her prior sentence was revoked … and she was given a state sentence of 12 to 60 months, with credit for 115 days of presentence incarceration.

[8] **Gagnon v. Carpelli**, 411 U.S. 778 … (1973).

Trial Court Opinion (TCO), 11/18/22, at 1-3 (some footnotes and capitalization omitted).

Appellant did not file a post-sentence motion or direct appeal. Instead, on October 11, 2022, she filed a *pro se* PCRA petition, asserting various claims, including ineffective assistance of counsel. The PCRA court thereafter issued an order dismissing Appellant's PCRA petition on the basis that it was premature and a legal nullity, as "[t]he time period in which [she] may filed a PCRA petition … ha[d] not yet begun." Order, 10/10/22,[1] at 1 (citing **Commonwealth v. Brown**, 943 A.2d 264 (Pa. 2008) (holding that the time-period for filing a PCRA petition commences at the conclusion of direct review, or the expiration of the time for seeking review, when a sentence becomes final for PCRA purposes); **Commonwealth v. Neisser**, 2020 WL 603614 (Pa. Super. Feb. 7, 2020) (unpublished memorandum) (concluding that Neisser's PCRA petition was premature and a legal nullity where it was filed prior to his judgment of sentence becoming final, prior to the expiration of the time period to file a direct appeal, and prior to the commencement of the one-year period allowed for filing a PCRA petition)).[2]

On October 19, 2022, Appellant filed a timely notice of appeal from the revocation sentence, and she complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed

---

[1] Appellant's *pro se* PCRA petition was time-stamped as having been filed on October 11, 2022, while the court's order dismissing it was time-stamped as filed on October 10, 2022. The cause of this discrepancy is not clear in the record before us.

[2] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value.

its Rule 1925(a) opinion on November 18, 2022. Herein, Appellant states one issue for our review: "Did the court abuse its discretion in finding that … Appellant violated conditions of her sentencing order and resentenc[ing] her based on a condition imposed upon her by the Probation Department and not the sentence [the court] imposed?" Appellant's Brief at 4.

In assessing Appellant's issue, we are guided by the following:

> "[I]n an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." **Commonwealth v. Wright**, 116 A.3d 133, 136 (Pa. Super. 2015) (citation omitted). Further, "[r]evocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." **Commonwealth v. Colon**, 102 A.3d 1033, 1041 (Pa. Super. 2014).

**Commonwealth v. Shires**, 240 A.3d 974, 977–78 (Pa. Super. 2020).

Instantly, Appellant contends that the court found her in violation of her probation based on her violating a condition imposed by Assistant Chief Pierce, and not by the trial court. Appellant explains that, "[w]hile being supervised, purportedly and [as] a result of her mental health issues, … [A]ppellant became obsessed with her supervising [probation] officer[, Kaylee Daly]. … [A]ppellant wrote a letter to the officer indicating her attraction to her and broke her curfew." Appellant's Brief at 8. Consequently, Appellant's case was reassigned to a different probation officer, and "Assistant Chief [Pierce] imposed a special condition on [Appellant] that she not have any contact with

[Officer Daly]." *Id.* Appellant stresses that "[a] court may find a defendant in violation of probation only if the defendant has violated one of the 'specific conditions' of probation *included in the probation order* or has committed a new crime." *Id.* at 9 (emphasis added) (quoting *Commonwealth v. Foster*, 214 A.3d 1240, 1250 (Pa. 2019)). According to Appellant, here, the no-contact condition was not imposed by the trial court in the probation order but, instead, was imposed by Assistant Chief Pierce. Therefore, Appellant contends that the court erred by revoking her probation based on her violating this condition.

In rejecting Appellant's argument, the trial court observed that a condition of Appellant's probation was that she "obey the law and be of good behavior generally." TCO at 2-3 (citing local Crawford County Rule of Criminal Procedure 708(A)(14)). The court concluded that Appellant's "probation violation was not that [she] disobeyed Assistant Chief Pierce's directive, but rather that she engaged in a course of conduct amounting to harassment." *Id.* at 5. Specifically, "[t]he evidence showed that [Appellant] had been contacting Officer Daly with unsolicited letters, texts[,] and other social messaging in pursuit of a sexual relationship." *Id.* (citations omitted). The court noted that "the Assistant Chief's directive" that Appellant have no contact with Officer Daly "tends merely to establish that [Appellant] knew she was not engaging in lawful or good behavior." *Id.* at 6 n.12.

We need not determine whether Appellant's conduct amounted to the crime of harassment, as it is clear that, at the very least, she was not acting

with "good behavior generally[,]" which was required by the court's probation conditions.[3]  Moreover, we agree with the trial court that Assistant Chief Pierce's instruction that Appellant not contact Officer Daly was not a separate and distinct probation condition but, rather, it simply served to alert Appellant that her doing so was not acceptable behavior.  Notably,

> [o]ur Supreme Court has distinguished between "conditions of probation," which are imposed by a trial court, and "conditions of supervision," which are imposed by the [Pennsylvania] Board [of Probation and Parole] and its agents.  [***Commonwealth v. Elliott***, … 50 A.3d 1284, 1291-92 ([Pa.] 2012).[4]]  The Sentencing Code permits trial courts to set forth "reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life."  42 Pa.C.S. § 9754(b).
>
>> Subsection (c) delineates fourteen conditions a sentencing court may impose upon a defendant in the imposition of probation.  Among these, courts may direct defendants on probation to attend treatment and addiction programs, pay fines and restitution, and refrain from frequenting "unlawful or disreputable places."  ***Id.*** § 9754(c)(12), (8), (11), and

---

[3] We note that Appellant does not challenge the validity of the court's condition that she exhibit 'good behavior generally.'  Instead, she simply maintains that Assistant Chief Pierce imposed a wholly new and separate condition by directing her to not have contact with Officer Daly.

[4] We recognize that the issue before the ***Elliott*** Court was whether the Pennsylvania Board of Probation and Parole has authority to impose supervision conditions under Megan's Law.  ***Elliott***, 50 A.3d at 1289.  Here, in contrast, Appellant is challenging the authority of a county probation officer to impose a probation condition, generally.  However, we deem ***Elliott*** applicable to the issue at hand, as the ***Elliott*** Court acknowledged that the question before it "[f]airly encompassed … a general inquiry concerning whether the Board, ***county probation offices***, or the agents and officers thereof, can impose conditions upon probationers that are not explicitly delineated in a trial court's sentencing and probation order."  ***Id.*** at 1289 (emphasis added).

- 6 -

(6), respectively. Further, subsection (c)(13) provides a "catch-all" for trial courts, allowing them to order defendants "[t]o satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." *Id.* § 9754(c)(13).

… *Elliott*, … 50 A.3d [at] 1288….

The Board's authority to set forth conditions of supervision, on the other hand, is derived from sections 6131 and 6151 of the Prisons and Parole Code, which mandate that the Board and its agents establish uniform standards for the supervision of probationers under its authority and implement those standards and conditions. *Id.* (citing 61 Pa.C.S. §§ 6131(a)(5)(ii) & 6151).

After examining the interplay between the Crimes Codes and Prisons and Parole Code, our Supreme Court concluded that while only the trial court could set conditions of probation, *"the Board and its agents may impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court."* *Id.* at 1292. Stated another way, the *"trial court may impose conditions of probation in a generalized manner, and the Board or its agents may impose more specific conditions of supervision, so long as these supervision conditions are in furtherance of the trial court's conditions of probation." Id.* Therefore, "a probationer may be detained, arrested, and 'violated' for failing to comply with either a condition of probation or a condition of supervision," as long as the condition of supervision does not exceed the Board's authority to impose it. *Id.*

*Shires*, 240 A.3d at 977–78 (emphasis added).

Here, the trial court imposed a general condition of probation that Appellant obey the law and be of good behavior generally. Assistant Chief Pierce's directive that Appellant not contact Officer Daly simply elaborated on, and acted in furtherance of, that general condition. In other words, Assistant Chief Pierce's no-contact instruction notified Appellant that her continuing to

communicate with Officer Daly was not behavior that was acceptable under the court-imposed, good-behavior condition of her probation. Nevertheless, Appellant chose to continue to pursue and repeatedly contact Officer Daly. We discern no error or abuse of discretion in the court's conclusion that she violated the good-behavior condition of her probation based on this conduct.

Alternatively, we would also agree with the trial court's harmless error analysis. The court explained:

> [Appellant] was found to have violated other conditions of probation, such as using a controlled substance, failing to complete DUI school, and leaving her residence without authorization while on house arrest/electronic monitoring. Indeed, her counsel stated that "she was in violation of the house arrest rules, … [that] there are other violations that she did commit … [and] I do believe she was in violation based on those other allegations." N.T. [Hearing, 9/28/22,] at 12; **see also id.** at … 37 ([Appellant's stating, "I realize that they are violations."). Consequently, if the finding was erroneous that [Appellant] violated her probation by the manner in which she pursued Officer Daly, this would … constitute harmless error.

TCO at 6-7 (footnotes and some citations to the record omitted).

While Appellant argues on appeal the court's ostensible error was not harmless because the court premised her sentence "almost entirely" on her violating the condition that she not contact Officer Daly, the record does not support this position. Appellant's Brief at 9 (citing N.T. Hearing at 39-42). In the portion of the sentencing transcript cited by Appellant, the court explained that Appellant "has been given every single opportunity at the local level to be successful and has just simply failed in that regard." N.T. Hearing at 39. The court also stated that it reviewed the presentence report and the

information it had when imposing Appellant's original sentence in 2021. *Id.* It also "read very carefully the report that was prepared by Dr. [Ingrid K.] Rednberg[,]" a board certified psychiatrist who opined that Appellant was competent. *Id.* The court acknowledged that Appellant "suffers substantially from severe mental illness." *Id.* However, the court noted that various programs and opportunities had been provided to Appellant to help her to no avail. *Id.* at 39-40. The court found that Appellant is a danger to the community based on "what was sent to Officer Daly[,]" *as well as* Appellant's prior record, which includes convictions for harassment, disorderly conduct, simple assault, DUI, fleeing and eluding police, loitering and prowling at night, and false imprisonment. *Id.* at 40-41. Ultimately, the court found that Appellant presents a danger to the community, and that it had "done everything [it could] to help her with her mental health needs" at the county level, without success. *Id.* at 41. Accordingly, the court concluded that the state system would provide better programs for Appellant and "a re-entry plan that meets her needs" more successfully than the county was able to do. *Id.*

Clearly, this record shows that the court's sentence was not premised 'almost entirely' on Appellant's contacting Officer Daly. Instead, the court focused on her prior record, rehabilitative needs, failure to take advantage of the opportunities and programs available at the county level, and, most importantly, the danger Appellant poses to the community. Thus, we would agree with the court that, even if it erred in finding Appellant in violation of her probation based on her contacting Officer Daly, any such error was

harmless. Appellant committed other violations that warranted the court's revoking her probation, and her sentence was not premised solely on her contacting Officer Daly.

Judgment of sentence affirmed.

Judge Stabile joins this memorandum.

Judge Pellegrini concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2023