J-S34042-24

2024 PA Super 267

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT FRANKLIN MUCCI | : | |
| | : | |
| Appellant | : | No. 138 WDA 2024 |

Appeal from the Order Entered December 29, 2023
In the Court of Common Pleas of Elk County Criminal Division at No(s):
CP-24-CR-0000327-2009

BEFORE: DUBOW, J., LANE, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.: **FILED: November 13, 2024**

Appellant Robert Franklin Mucci appeals *pro se* from the December 29, 2023, order entered in the Court of Common Pleas of Elk County, which denied his "Motion to Vacate Defendant's Illegal SVP Designation and Lifetime Registration Requirements Imposed under Megan's Law III." After a careful review, we affirm.

This Court has previously set forth the relevant facts and procedural history, in part, as follows:

> The record of this case includes [Appellant] having entered pleas of guilty to two counts of aggravated indecent assault[-complainant less than 13 years old], 18 Pa.C.S.A. [§] 3125(a)(7), and one count of sexual abuse of children, 18 Pa.C.S.A. [§] 6312(b), all graded as second degree felonies, on August 18, 2011. [Appellant admitted he committed the crimes on or about August 29, 2009.] Consequently, [Appellant] was ordered to

---

* Former Justice specially assigned to the Superior Court.

undergo an assessment by a member of the Sexual Offenders Assessment Board (SOAB) pursuant to 42 Pa.C.S.A. [§] 9795.4. The assessment by a member of [the] SOAB was conducted on October 20, 2011. On November 21, 2011, [Appellant] entered a signed stipulation with his counsel in which he agreed that the October 21, 2011, report of the member of [the SOAB] provided sufficient, clear, and convincing evidence that he was a sexually violent predator (SVP). [Appellant] also waived the necessity of any SVP hearing, and [he] agreed that the stipulation that he was an SVP could be entered as a court order. By order of court dated November 23, 2011[,] and docketed November 28, 2011, [Appellant] was found to be [an SVP] pursuant to 42 Pa.C.S.A. [§] 9795.4(e) and 42 Pa.C.S.A. [§] 9792, provisions of Megan's Law III[,] which was in effect at that time. [Appellant] was then sentenced on December 22, 2011[,] in accordance with the terms of the proposed sentence negotiated by counsel for the Commonwealth and [defense counsel,] Douglas Sughrue, Esquire. In accordance with the negotiated pleas and suggested sentences, he was sentenced, *inter alia*, to an aggregate period of incarceration of not less than 8 [years] nor more than 27 years. The [trial] court provided [Appellant] with a registration notice dated December 22, 2011[,] and docketed December 27, 2011[,] stating that he was subject to the lifetime registration requirements of Megan's Law III including 42 Pa.C.S.A. [§] 9795.1(b)(2) and 42 Pa.C.S.A. [§] 9795.1(b)(3).

[On August 26, 2016, Appellant filed a] petition for a *writ* of *habeas corpus*/*writ* of *coram nobis*, [and a hearing] was scheduled for February 27, 2017, but continued until May 22, 2017. A *pro se* motion for correction of the record and issuance of a corrected DC-300B commitment order was then filed by [Appellant] on March 9, 2017. The hearing on that motion was scheduled for the same time as the continued hearing on May 22, 2017. [Appellant] then filed a petition on May 4, 2017, withdrawing two claims asserted in his *habeas corpus* petition and requesting that the hearing be conducted by video conference. [Appellant] next requested a continuance of the May 22, 2017[,] hearing due to the inability of the Department of Corrections to provide adequate time to conduct the hearing by video conference. The hearing was continued until August 4, 2017[,] and then ultimately rescheduled until September 29, 2017.

On August 24, 2017, [Appellant] filed an "Addendum/Supplement to Petitioner's *Habeas Corpus*/*Coram* Petition seeking Declaratory and Injunctive Relief from the

Retroactive Application of SORNA." The Commonwealth filed a motion to dismiss [Appellant's] petition for a writ of *habeas corpus* on September 29, 2017, to which [Appellant] filed an answer. [Appellant] filed a brief in support of his *habeas* petition on December 8, 2017. He next filed a post-brief submission/addendum to argument/supplemental case authority supporting relief requested retroactively on December 18, 2017. [Appellant] then filed a second post brief submission on December 27, 2017. The motion for leave to supplement the record filed by [Appellant] on April 23, 2018[,] was granted by Order of Court on September 7, 2018[,] and [Appellant] was given until October 1, 2018[,] to submit any additional authority. An amendment/supplement to the *habeas* petition was filed by [Appellant] on September 24, 2018. The October 1, 2018, date notwithstanding, [Appellant's] "post case submissions" received and filed on November 8, 2018[,] and December 20, 2018[,] respectively [were] also considered.

On December 28, 2018, the trial court entered an order denying Appellant's petition. [Specifically, the trial court determined Appellant's filings were untimely petitions filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.] Appellant did not file an appeal from the December 28, 2018, order. Rather, Appellant filed a petition for reconsideration on January 7, 2019, which the trial court denied on February 15, 2019. On March 4, 2019, Appellant filed a motion seeking the reinstatement of his appeal rights *nunc pro tunc*. On April 22, 2019, the trial court scheduled a hearing on the motion, and on May 23, 2019, appointed counsel for purposes of the hearing. The trial court held a hearing on July 29, 2019. On October 2, 2019, the trial court entered an order denying Appellant's motion for reinstatement of his right to appeal. Further, the order vacated the limited appointment of counsel and appointed new counsel to represent Appellant in "any subsequent proceedings and to address the merit, if any, of the positions and issues promoted by [Appellant]." Order, 10/2/19, at 2.

On October 31, 2019, newly appointed counsel filed a motion to withdraw and a **Turner/Finley**[1] no-merit letter. On June 18, 2020, the trial court filed a "discussion, notice and order," ultimately ordering that "in accordance with Pa.R.Crim.P. 907(1),

---

[1] **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

the Commonwealth and [Appellant] are notified that to the extent any of [Appellant's] pending pleadings are construed as a PCRA petition, the [c]ourt intends to dismiss such petition." Order, 6/18/20, at 3. Also, on June 18, 2020, the trial court filed an order granting appointed counsel's request to withdraw….On July 17, 2020, the trial court entered an order denying any pending PCRA petitions. Appellant filed [a notice of] appeal on August 17, 2020.

*Commonwealth v. Mucci*, No. 876 WDA 2020, 2021 WL 2592376, at *1-4

(Pa.Super. filed June 24, 2021) (unpublished memorandum) (citation to

record and footnote omitted) (footnote added).

On appeal, this Court quashed Appellant's appeal on the basis he failed

to file a timely appeal. Specifically, we held as follows:

> As set forth in the recitation of the procedural history of this case, on August 26, 2016, nearly five years after entry of his judgment of sentence and SVP designation, Appellant filed a petition for *writ* of *habeas corpus* and/or *writ* of *coram nobis*. Appellant then provided the trial court with additional filings, and a hearing was held on September 29, 2017. Subsequently, Appellant filed additional pleadings with the trial court. On December 28, 2018, the trial court entered an order that denied Appellant's petition, considering it to be an untimely PCRA [petition]. However, Appellant failed to take a timely appeal from that order.
>
> ***
>
> We [conclude] that the appealable order in this matter was entered on December 28, 2018. As such, the instant appeal, filed on August 17, 2020, is patently untimely, and at this juncture, we lack jurisdiction to address Appellant's claims.

*Id.* at *6-7.

Nevertheless, this Court relevantly noted as follows in a footnote:

> We note that in *Commonwealth v. Lacombe*, 660 Pa. 568, 234 A.3d 602 (2020), our Supreme Court recognized the problems

registrants face in challenging changes to sex-offender-registration statutes, and [the Court] declared that registrants are not to be restricted to using the PCRA as the exclusive means for challenging their registration requirements. *Id.* at 617-18. Consequently, if we had been presented with a timely appeal from the final order entered [on] December 28, 2018, pursuant to *Lacombe*, we would have held Appellant's challenge to his registration is not subject to the PCRA's time limitations. *See Commonwealth v. Smith*, 240 A.3d 654, 658 (Pa.Super. 2020) (holding that substantive claims challenging the application of SORNA II's lifetime registration requirements are not cognizable under the PCRA, and thus, not subject to its time-bar). Hence, if we had reached the merits of Appellant's claims, we would have vacated the December 28, 2018, order of the trial court that concluded Appellant's filing was an untimely PCRA petition and remanded for further proceedings.

*Mucci*, No. 876 WDA 2020, *7-8 n.4.

Thereafter, Appellant filed a petition for allowance of appeal with our Supreme Court, which denied the petition on January 4, 2022.

On July 6, 2023, Appellant filed a *pro se* motion entitled "Motion to Vacate Defendant's Illegal SVP Designation and Lifetime Registration Requirements Imposed under Megan's Law III."[2]  On August 17, 2023, the Commonwealth filed an answer in opposition to Appellant's motion.

On October 25, 2023, the trial court held a hearing on Appellant's *pro se* motion.  During the hearing, Appellant admitted he was deemed to be a

---

[2] Although this *pro se* motion was docketed on July 27, 2023, we deem it to have been filed on July 6, 2023, when Appellant handed it to prison officials. *See Commonwealth v. Jones*, 549 Pa. 58, 700 A.2d 423 (1997) (explaining the "prisoner mailbox rule").

SVP under Megan's Law III.[3]  N.T., 10/25/23, at 22.  However, he argued,

that Megan's Law III was void *ab initio*, and, consequently, there was no

authority to impose registration, notification, and counseling requirements

upon him. ***Id.*** at 23. Moreover, Appellant argued that any attempt to apply

Subchapter I of SORNA II retroactively was unconstitutional.  ***Id.*** at 22.

Furthermore, although Appellant admitted during the October 25, 2023,

hearing that, on November 21, 2011, he signed a stipulation agreeing that the

October 21, 2011, report of the SOAB provided sufficient, clear, and

convincing evidence that he was a SVP, and this stipulation was entered as a

---

[3] For background purposes, we note that Megan's Law III, 42 Pa.C.S.A. §§ 9795.1-9799.4, was in effect at the time of Appellant's sentencing.  However, on December 20, 2011, the Pennsylvania General Assembly enacted the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9791-9799.9.  As a result, SORNA provided for the expiration of Megan's Law III, as of December 20, 2012, the effective date of SORNA. Thereafter, in response to various Pennsylvania Supreme Court decisions, the Legislature amended SORNA I and enacted SORNA "Act 10" of 2019, Act of Feb. 21, 2018, P.L. 27, creating a new statutory scheme referred to as SORNA II. Through Act 10, the General Assembly split SORNA I's former Subchapter H into a Revised Subchapter H and Subchapter I. Subchapter I addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012.  ***See*** 42 Pa.C.S.A. §§ 9799.51-9799.75. Subchapter I contains less stringent reporting requirements than Revised Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. ***See*** 42 Pa.C.S.A. §§ 9799.10-9799.42.  Since Appellant committed his offenses on or about August 29, 2009, Subchapter I applies in this case.
    Under Subchapter I, a person designated to be an SVP is subject to lifetime registration.  ***See*** 42 Pa.C.S.A. § 9799.55(b)(3)-(4). In ***Lacombe***, our Supreme Court held that the registration requirements in Subchapter I are not punitive and thus retroactive application of those requirements does not violate our constitutional *ex post facto* rules.  ***See Lacombe***, ***supra***, 234 A.3d at 626-27.  ***Lacombe*** further held that a challenge to a sexual offender registration statute could be brought outside the PCRA.  ***See id***. at 618.

court order, Appellant offered into evidence "law reviews and some other reports that have been generated regarding recidivism of sexual offenders[.]" *Id.* at 19-20. Appellant averred the evidence was necessary to address the irrebuttable presumption of recidivism set forth in Subchapter I, which he alleged violated his right to reputation. Appellant did not present any expert testimony.

By order and opinion filed on December 29, 2023, the trial court denied Appellant's *pro se* motion. This timely *pro se* appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Involved" (verbatim):

A. Whether the lower court erred by failing to grant Appellant relief from the void SVP designation and lifetime registration requirements imposed under Megan's Law III by applying the void *ab initio* doctrine to vacate them and declare them null and void and unenforceable?

B. Whether the lower court erred by denying Appellant an opportunity to present scientific case studies rebutting the irrebuttable presumption of future dangerousness utilized by the legislature in 42 Pa.C.S.A. § 9799.51(a)(2) during the evidentiary hearing requiring a remand for further factual development in accordance with **Commonwealth v. Torsilieri**, 659 Pa. 359, 232 A.3d 567, 595 (2020), and **Commonwealth v. Boyd**, 287 A.3d 957, 960 (Pa.Super. 2022)?

C. Whether the lower court erred by failing to vacate and correct Appellant's illegal sentence *sua sponte* and impose a lawful sentence under its inherent powers of correction pursuant to **Commonwealth v. Holmes**, 593 Pa. 601, 933 A.2d 57 (2007), despite the statutory timelines limitations placed upon a trial court's constitutional authority by 42 Pa.C.S.A. § 9545(b)(1)?

Appellant's Brief at 5 (suggested answers omitted).

In his first issue, Appellant contends he is challenging the "legality of his SVP designation and the lifetime registration, notification, and counseling requirements (RNC) imposed upon him absent any valid statutory authority under void Megan's Law III[.]" Appellant's Brief at 16. He contends that his RNC requirements were imposed under a statute (Megan's Law III) which is void *ab initio*, and any attempt to impose RNC requirements is unconstitutional.[4] Moreover, Appellant claims any attempt to apply Subchapter I of SORNA II retroactively to him is unconstitutional. ***See id.*** at 30. Additionally, he claims an offender who was subjected to Megan's Law III cannot lawfully be considered an "existing registrant" under SORNA II based upon acts rendered null and void. ***See id.*** at 42.

Initially, we note Appellant's claims "raise questions of law for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Torsilieri***, 659 Pa. 359, 232 A.3d 567, 575 (2020) (citation omitted). In resolving such claims, our Supreme Court has explained:

_____

[4] We note Appellant initially claims that, since Megan's Law III is void, we should cease our inquiry and conclude he cannot be subject to any RNC requirements. He claims: "Void from the beginning-void for all time." Appellant's Brief at 26. However, given our Legislature's passing of SORNA II, and more specifically Subchapter I to which Appellant is subject, we disagree that our inquiry ends with the voiding of Megans' Law III. Apparently recognizing we might so hold, Appellant alternatively argues that application of Subchapter I of SORNA II retroactively is unconstitutional.

> In addressing constitutional challenges to legislative enactments, we are ever cognizant that the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society, but also that any restriction is subject to judicial review to protect the constitutional rights of all citizens. We emphasize that a party challenging a statute must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution.

*Id.* (citations, quotations, and quotation marks omitted).

On the merits, we agree with Appellant that he is no longer subject to Megan's Law III, as our Supreme Court struck down that law eleven years ago. *See Commonwealth v. Neiman*, 624 Pa. 53, 84 A.3d 603 (2013). We disagree, however, with Appellant's claims that his SVP designation cannot stand, and he may be exempt from Subchapter I. Contrary to his argument, the applicability of SORNA II to his case has been settled, as the *Lacombe* Court held that Subchapter I does not constitute criminal punishment, and its retroactive application does not violate *ex post facto* concerns. *See Lacombe*, *supra*, 234 A.3d at 626-27.

Moreover, in *Commonwealth v. Barger*, ___ A.3d ___, 2024 WL 4367448 (Pa.Super. filed 10/2/24), this Court recently held as follows:

> [The] appellant argues that he cannot be required to register under Subchapter I of SORNA II since his duty to register as a SVP arose under Megan's Law III, which has since been determined to be void. [The] appellant, who committed his qualifying offenses before December 20, 2012, argues that Subchapter I of SORNA cannot be retroactively applied to him as such a designation would be violative of *ex post facto* prohibitions. However, [the] appellant does not suggest that the RNC requirements imposed upon him through Subchapter I are in any way punitive.

[I]n **Butler II**,[5] our Supreme Court rejected a similar challenge to Subchapter H of SORNA, as it found that the RNC requirements imposed on SVPs therein do not constitute criminal punishment. The Court distinguished SVPs from non-SVP registrants "due to heightened public safety concerns based on the determination that SVPS have a 'mental abnormality or a personality disorder that makes the individual more likely to engage in predatory sexually violent offenses.'" **Butler II**, 657 Pa. at 604, 226 A.3d at 987 (quoting 42 Pa.C.S.A. § 9799.12).

∗∗∗

We also reiterate that in **Lacombe**, the Supreme Court specifically found that Subchapter I of SORNA II "is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws." **Lacombe**, 660 Pa. at 575, 234 A.3d at 605-06.

Given the same logic set forth in **Butler II** and **Lacombe**, this Court has rejected *ex post facto* challenges brought by petitioners deemed to be SVPs under Megan's Law III, who claimed they should not be subject to retroactive application of Subchapter I of SORNA II. In **Commonwealth v. Zack**, 262 A.3d 497 (Pa.Super. 2021), this Court held that the appellant, who was originally deemed an SVP under Megan's Law III, "must now register under Subchapter I of SORNA II, which has less stringent reporting requirements than the constitutionally permissible requirements of Subchapter H." **Id.** at 505.

As a result, [the] appellant's claim that he cannot be required to submit to RNC requirements set forth in Subchapter I of SORNA II is clearly meritless. Accordingly, the trial court correctly determined that [the] appellant is not entitled to *habeas* relief.

**Barger**, **supra**, 2024 WL 4367448, at *5-6 (footnotes and citation omitted)

(footnote added). **See Commonwealth v. Moreno**, No. 1418-19 MDA 2024,

---

[5] **Commonwealth v. Butler**, 657 Pa. 579, 226 A.3d 972 (2020) (**Butler II**).

2024 WL 1952686 (Pa.Super. filed May 3, 2024) (unpublished memorandum)[6] (recognizing that, in *Lacombe*, our Supreme Court held that the retroactive application of Subchapter I of SORNA II is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws).

Based on the aforementioned legal holdings, we conclude Appellant is not entitled to relief. While we agree with Appellant that Megan's Law III, the statute under which his RNC requirements were imposed, has been voided, this does not end our inquiry. Rather, we conclude Appellant is subject to the RNC requirements of Subchapter I of SORNA II, and as indicated *supra*, such retroactive application is not violative of the *ex post facto* clause.[7]

Furthermore, we reject Appellant's claim that an offender who was subjected to Megan's Law III cannot lawfully be considered an "existing registrant" under SORNA II. We note Section 9799.55(b)(3) of Subchapter I specifically imposes lifetime registration on an SVP. **See** 42 Pa.C.S.A. § 9799.55(b)(3). An SVP, in turn, is defined as:

> [A] person who has been convicted of a sexually violent offense and who is determined to be a sexually violent predator under section 9799.58 (relating to assessments) due to a mental

---

[6] **See** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[7] We note Appellant also claims Subchapter I violates the separation of powers doctrine by unconstitutionally usurping judicial sentencing authority. However, in *Lacombe*, our Supreme Court noted that such a claim necessarily fails since Subchapter I is nonpunitive. **See Lacombe**, **supra**, 234 A.3d at 608 n.5.

abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses or who has ever been determined by a court to have a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses under a former sexual offender registration law of this Commonwealth.

42 Pa.C.S.A. § 9799.53. Since the trial court determined, in 2011, that Appellant met the criteria for an SVP under Megan's Law III, he remains an SVP for purposes of Subchapter I. **See Commonwealth v. Haggerty**, No. 1305 WDA 2023, 2024 WL 4318605 (Pa.Super. filed Sept. 27, 2024) (unpublished memorandum) (rejecting the appellant's claim that an offender who was subjected to Megan's Law III cannot lawfully be considered an "existing registrant" under SORNA II based upon acts rendered null and void).

In his next issue, Appellant claims his RNC requirements, as imposed by Subsection I of SORNA II, violate the right to reputation[8] without due process. **See** Appellant's Brief at 44-45. Appellant also claims his SVP designation under Subsection I of SORNA II creates an unconstitutional irrebuttable presumption. **Id.** Specifically, Appellant claims that, in Subchapter I, the General Assembly created an unconstitutional irrebuttable presumption by indicating that "sexually violent predators and offenders pose a high risk of engaging in further offenses," which is not universally true for all those required to register and is not true for him. **Id.**

---

[8] The Pennsylvania Constitution recognizes the right to reputation as a fundamental interest. **See Commonwealth v. Morgan**, 258 A.3d 1147 (Pa.Super. 2021).

Initially, we note that, in ***Commonwealth v. Morgan***, 258 A.3d 1147 (Pa.Super. 2021), this Court held as follows:

> Although an SVP designation and the concomitant RNC requirements infringe upon a defendant's right to reputation, it is only after [a] detailed assessment and hearing process that an individual may be subject to that infringement. Upon review, we conclude that this procedure comports with due process and that Subchapter I is narrowly tailored to its compelling state purpose of protecting the public from those who have been found to be dangerously mentally ill. Accordingly, we hold that SVP designations under Subchapter I of SORNA II are constitutional and do not violate the right to reputation under Pennsylvania's constitution.

***Id.*** at 1157 (citations and quotation marks omitted). ***See Commonwealth v. Zepprinans***, No. 1815 EDA 2020, 2022 WL 102632 (Pa.Super. filed Jan. 11, 2022) (unpublished memorandum) (holding a defendant's SVP designation under Subchapter I of SORNA does not violate a defendant's right to reputation).

Further, in ***Commonwealth v. Guo***, No. 643 WDA 2023, 2024 WL 3200042 (Pa.Super. filed June 27, 2024) (unpublished memorandum), after analyzing ***Morgan***, ***supra***, this Court examined the irrebuttable presumption doctrine. Specifically, we reasoned as follows:

> Our Supreme Court recently issued its disposition in ***Commonwealth v. Torsilieri***, ____ Pa. ____, 316 A.3d 77 (2024), in which the Court considered whether the General Assembly's determination, in [SORNA II], that individuals who commit sexual offenses pose a high risk of committing additional sexual offenses constitutes an unconstitutional irrebuttable presumption violative

of due process, because it impairs the right to reputation under the Pennsylvania Constitution.[9]

Our High Court explained:

[T]he first issue before us concerns a presumption which largely undergirds the criminal justice system's treatment of sex offenders: that those who commit sexual offenses pose a high risk to reoffend. The General Assembly has memorialized this presumption in its legislative findings: "Sexual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S.A. § 9799.11(a)(4).[10] To challenge such assumptions under the irrebuttable presumption doctrine, a challenging party must demonstrate: (1) an interest protected by the due process clause, (2) utilization of a presumption that is not universally true; and (3) the existence of a reasonable alternative means to ascertain the presumed fact.

*Id.* at 79 (some internal citations omitted).

The Court noted that the parties did not meaningfully dispute the first prong of the doctrine—that "the right to reputation is protected by the due process clause and that the designation as a sexual offender, based upon a presumption of posing a high risk of recidivism, impacts one's reputation." *Id.* at 97 n.13. Turning to the second prong of the irrebuttable presumption doctrine, the Court explained that "to meet his heavy burden of establishing that the General Assembly's presumption was not universally true, [the] [a]ppellee was required to establish that there exists a scientific consensus that sexual offenders pose

_____

[9] We note that the defendant in *Torsilieri* was not an SVP. Moreover, *Torsilieri* focused on Revised Subchapter H and whether the presumption contained in Section 9799.11(4) of SORNA — that individuals convicted of sexual offenses pose a high risk of committing additional sexual offenses — was an unconstitutional irrebuttable presumption.

[10] As it applies to Subchapter I, the General Assembly provided: "These sexually violent predators and offenders pose a high risk of engaging in further offenses even after being released from incarceration or commitments, and protection from this type of offender is a paramount governmental interest." 42 Pa.C.S.A. § 9799.51(a)(2).

- 14 -

no greater risk of committing additional sexual crimes than other groups not subject to similar registration laws." *Id.* at 98.

The Court held:

Here, [the] [a]ppellee's own experts concede that adult sexual offenders reoffend at a rate of at least three times higher than other individuals convicted of non-sexual offenses. Accordingly, rather than refuting it, the evidence supports the legislative presumption; the evidence validates the statutory underpinnings of Subchapter H. We need go no further. Having reviewed arguments and the evidence presented below, we find that the evidence does not demonstrate a consensus that the presumption at issue is not universally true. Thus, we hold [the] [a]ppellee has failed to meet his heavy burden to demonstrate that the irrebuttable presumption at issue was constitutionally infirm.

*Id.* at 99 (citations and footnote omitted).

Based on its disposition of the second prong, the Court did not need to evaluate the third prong of the irrebuttable presumption. Nevertheless, the Court noted that the third prong would be met because SORNA II provides "for individualized assessment of adult sexual offenders as [SVPs]." *Id.* at 97 n.13.

Instantly, we note at the outset that, unlike the defendant in *Torsilieri*, [the] [a]ppellant [in *Guo*] was designated an SVP. Although [the] [a]ppellant claims that his SVP status violates his right to reputation as protected under the due process clause, and that the presumption of his likelihood to reoffend is not universally true, [the] [a]ppellant offers no reasonable alternative means to ascertain the presumed fact. The *Torsilieri* Court noted that the third prong required to challenge the irrebuttable presumption doctrine would be met for non-SVPs attacking their registration requirements, because a reasonable alternative means to evaluate their likelihood of re-offense would be through an individualized assessment similar to the assessments conducted for SVPs. *See Torsilieri*, *supra*, at 97 n.13. [The] [a]ppellant [in *Guo*] acknowledges that the SOAB has the tools necessary to conduct individualized assessments, but he complains that the SOAB representative failed to utilize those tools in [his] case. Thus, [the] [a]ppellant is essentially challenging the sufficiency of the evidence for his SVP designation based on what he alleges was an incomplete assessment by the SOAB. In the absence of any

- 15 -

proffered "reasonable alternative means to ascertain the presumed fact," [the] [a]ppellant's challenge to his SVP status under the irrebuttable presumption doctrine necessarily fails.

To the extent [the] [a]ppellant [in *Guo*] is advancing any challenge to the irrebuttable presumption doctrine that could implicate any registration requirement he may be subject to that falls outside his registration requirements as an SVP, our Supreme Court has now expressly held that "the evidence does not demonstrate a consensus that the presumption at issue is not universally true." *Torsilieri*, *supra*, at 99. [The] [a]ppellant does not proffer any evidence that would be inconsistent with or go beyond that which was presented in *Torsilieri*. In fact, [the] [a]ppellant's failure to present evidence to support his constitutional claim is reason enough to deny relief.

*Guo*, *supra*, 2024 WL 3200042, at *5-7 (footnote added) (footnotes omitted) (citations omitted).

Here, as in *Guo*, we note that Appellant was designated a SVP. Although Appellant claims that his SVP status violates the right to reputation as protected under the due process clause, and that the presumption of his likelihood to re-offend is not universally true, Appellant offers no reasonable alternative means to ascertain the presumed fact. As we noted in *Guo*, the High Court in *Torsilieri* held the third prong required to challenge the irrebuttable presumption doctrine would be met for non-SVPs attacking their registration requirements because a reasonable alternative means to evaluate their likelihood of re-offense would be available through an individualized assessment similar to the assessments conducted for SVPs.

However, in the case *sub judice*, the SOAB conducted an individualized assessment of Appellant. While Appellant may challenge whether the SOAB

considered all evidence, this is essentially a challenge to the sufficiency of the evidence for his SVP designation. As we held in *Guo*, "in the absence of any proffered reasonable alternative means to ascertain the presumed fact," Appellant's challenge to his SVP status in the case *sub judice* fails under the irrebuttable presumption doctrine. *Guo*, *supra*, 2024 WL 3200042, at \*5-6.

In his final claim, Appellant avers that, just as the PCRA is not the exclusive procedural mechanism for challenging sexual offender registration statutes, the PCRA is not the exclusive procedural mechanism for challenging the alleged illegality of his term of imprisonment and/or the voluntariness of his plea. Thus, Appellant avers the trial court erred in concluding his attempt to raise the issues was brought forth in an untimely PCRA petition.[11]

As indicated *supra*, in *Lacombe*, our Supreme Court held that Subchapter I of SORNA II does not constitute criminal punishment and expressly "decline[d] to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes[.]" *Lacombe*, *supra*, 234 A.3d at 618, 626. Accordingly, SORNA registrants seeking relief from such requirements are not required to do so in a timely-filed PCRA petition. *See id.* at 617-18. However, contrary to Appellant's

---

[11] We note Appellant raised his claims challenging the legality of his sentence and the voluntariness of his plea in his *pro se* "Motion to Vacate Defendant's Illegal SVP Designation and Lifetime Registration Requirements Imposed under Megan's Law III." As Appellant indicates, the trial court determined these claims should be treated under the auspices of the PCRA.

assertion, we conclude the PCRA court properly treated Appellant's purported legality of sentencing claim, as well as his challenge to the voluntariness of his plea, as claims falling under the auspices of the PCRA.[12]

It is well-settled the PCRA is "the sole means of obtaining collateral relief," and "if the underlying substantive claim is one that could potentially be remedied under the PCRA, that claim is exclusive to the PCRA." *Commonwealth v. Pagan*, 864 A.2d 1231, 1233 (Pa.Super. 2004) (emphasis omitted). Moreover, "[i]ssues that are cognizable under the PCRA must be raised in a timely PCRA petition and cannot be raised in a *habeas corpus* petition [or other self-styled petition outside of the PCRA]." *Commonwealth v. Taylor*, 65 A.3d 462, 466 (Pa.Super. 2013).

Here, Appellant challenges the legality of his sentence on the basis the trial court did not have the statutory authority to impose a mandatory minimum term of imprisonment.[13] He also avers the trial court's sentence

_____

[12] Our scope and standard of review when reviewing the denial of a PCRA petition are well-settled:

> [O]ur scope of review is limited by the parameters of the [PCRA]. Our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. Moreover, in general we may affirm the decision of the [PCRA court] if there is any basis on the record to support the [PCRA] court's action[.]

*Commonwealth v. Heilman*, 867 A.2d 542, 544 (Pa.Super. 2005) (quotations and citations omitted).

[13] As the Commonwealth notes, Appellant misreads the record inasmuch as the "Commonwealth waived the imposition of a mandatory minimum sentence
*(Footnote Continued Next Page)*

exceeds the statutory limits because the trial court imposed consecutive sentences in addition to the mandatory minimum term of imprisonment. He also generally avers his guilty plea was involuntarily entered since it was unlawfully induced.

Appellant's self-styled petition purports to raise legality of sentencing claims, as well as challenges to the voluntariness of his guilty plea. Both of these claims are cognizable under the PCRA and subject to the PCRA timeliness provisions. *See Commonwealth v. Moore*, 665 Pa. 95, 247 A.3d 990 (2021) (holding claims implicating legality of sentence must be raised under the auspices of the PCRA); 42 Pa.C.S.A. § 9543(a)(2)(iii) (indicating a defendant is eligible for PCRA relief where he alleges "[a] plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent."). Accordingly, as did the PCRA court below, we deem this portion of Appellant's *pro se* motion to be a serial PCRA petition. Thus, we proceed to determine whether it was timely filed under the PCRA.

> Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. The most recent amendments to the PCRA, effective January 16, 1996, provide a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the

under [Section] 9718(a)(3) when it entered into the negotiated plea agreement and [Appellant] entered his guilty plea." Commonwealth's Brief at 28.

- 19 -

Supreme Court of the United States and the Supreme Court of
Pennsylvania, or at the expiration of time for seeking the review."
42 Pa.C.S.A. § 9545(b)(3).

***Commonwealth v. Monaco***, 996 A.2d 1076, 1079 (Pa.Super. 2010)

(citations omitted).

> [There are] three statutory exceptions to the timeliness
> provisions in the PCRA [that] allow for the very limited
> circumstances under which the late filing of a petition will be
> excused.  42 Pa.C.S.A. § 9545(b)(1).  To invoke an exception, a
> petitioner must allege and prove:
>
> (i) the failure to raise the claim previously was the result of
> interference by government officials with the presentation of the
> claim in violation of the Constitution or laws of this Commonwealth
> or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were
> unknown to the petitioner and could not have been ascertained by
> the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was
> recognized by the Supreme Court of the United States or the
> Supreme Court of Pennsylvania after the time period provided in
> this section and has been held by that court to apply retroactively.

***Id.*** at 1079-80 (citing 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii)).

Under this framework, an appellant must either file a petition within one

year of his judgment of sentence becoming final under Section 9545(b)(3), or

"plead" and "prove" that one of the enumerated exceptions apply.  "[T]here

is no generalized equitable exception to the jurisdictional one-year time bar

pertaining to post-conviction petitions." ***Commonwealth v. Brown***, 596 Pa.

354, 943 A.2d 264, 267 (2008).

In the case *sub judice*, Appellant does not dispute that his instant

petition, filed on July 6, 2023, was not filed within one year from the date his

judgment of sentence became final, *i.e.*, in January of 2012, thirty days after he failed to file a direct appeal to this Court. ***See*** 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 903(a). Further, although under limited circumstances a petitioner may invoke a timeliness exception under which the late filing of a petition will be excused, Appellant does not present or develop any argument related to the timeliness exceptions. Instead, he contends the PCRA court erred in treating his *pro se* document as a PCRA petition subject to the timeliness requirements. As indicated *supra*, the PCRA court did not err in this regard.[14]

Accordingly, for the aforementioned reasons, we affirm the December 29, 2023, order. However, upon remand of the record, we direct the lower

_____

[14] We note Appellant claims that the PCRA time bar does not apply to his sentencing claims because the errors in his case are patent and obvious. He relies on ***Commonwealth v. McGee***, ____ Pa. ____, 302 A.3d 659 (2023), for the proposition that a court has the authority to correct patent and obvious errors "despite the absence of traditional jurisdiction." ***McGee***, ***supra***, 302 A.3d at 663. However, our Supreme Court expressly ruled in ***McGee*** that there was no patent error and it "[did] not reach the question of whether a trial court's inherent authority to correct patent and obvious errors in the record is subject to the time limitations of the PCRA." ***McGee***, ***supra***, 302 A.3d at 670. Therefore, Appellant's reliance on ***McGee*** is not legally persuasive.

Furthermore, even if a trial court's authority to correct patent and obvious errors in the record were not subject to the PCRA's time limitations, Appellant's claim of a patent and obvious error is unavailing. A patent and obvious error is one that is, as the title implies, obvious. Here, there is no obvious error.

court to notify Appellant of his registration requirements under Subchapter I.[15]

Order affirmed. Case remanded with instructions. Jurisdiction relinquished. Application for relief denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/13/2024

---

[15] On or about September 12, 2024, Appellant filed in this Court an "Application for Relief" wherein he seeks reimbursement of $92.40 for the copy and mail fees associated with the filing of his appellate brief. Appellant avers the funds were removed from his personal inmate account, and he wants the funds reimbursed to him. We deny Appellant's Application for Relief. Appellant is not proceeding *in forma pauperis* in this matter. Further, we note the trial court conducted an inquiry during the October 25, 2023, hearing as to Appellant's ability to pay. Appellant admitted he had over $20,000.00 in his checking account, and he had no financial impediment.